**REBEL MOTOR FREIGHT, INC., Plaintiff,**

v.

**FREEMAN DRYWALL COMPANY and Freeman Products, Inc., Defendants.**

No. 86–2973–TUA.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 22, 1994.

James Clay, III, Memphis, TN, for plaintiff.

Michael P. Coury, Memphis, TN, for defendants.

## ORDER ON MOTION TO DISMISS

TURNER, District Judge.

Plaintiff Rebel Motor Freight, Inc. ("Rebel") filed this suit in 1986 to recover $139,609.15, plus interest, from defendants Freeman Drywall Company and Freeman Products Inc. ("Freeman") for services rendered between June 1983 and June 1985. Rebel seeks to collect the difference between what Freeman paid for motor common carrier services pursuant to the parties negotiated rate agreements and the higher amounts provided for by Rebel's filed tariff rates.[1] Pursuant to the doctrine of primary jurisdiction, this matter was first referred to the Interstate Commerce Commission ("ICC") by the Honorable Robert M. McRae, Jr. on the motion of defendants. Judge McRae referred to the ICC the question of whether Rebel's proposed collection of the undercharges was an unreasonable practice. The ICC found that based on their negotiated rates policy, it would be an unreasonable practice to force defendants to pay more for the services than the original charges negotiated by the parties, and already paid by the defendants. *Freeman Products, Inc. v. Rebel Motor, Inc.*, No. MC–C–30015, slip op. at 6 (I.C.C. Sept. 15, 1988).

In 1990, the United States Supreme Court held in *Maislin Industries, U.S., Inc., v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), that the ICC's negotiated rates policy violated the Interstate Commerce Act, and therefore deviations from the filed rate doctrine were prohibited. *Id.* The *Maislin* Court did, however, affirm the ICC's jurisdiction to determine the reasonableness of a particular tariff rate. *Id.* at 128, 110 S.Ct. at 2767. Therefore, on June 2, 1992, also pursuant to defendants' motion, this court again referred the matter to the ICC for the purpose of determining what would be a reasonable

---

**1.** In the motor carrier industry, this difference is commonly referred to as a freight undercharge.

rate for the carrier services provided in this case. While the case was pending before the ICC, Congress passed the Negotiated Rates Act of 1993 Pub.L. No. 103–180, 107 Stat. 2044 (1993) ("NRA"), which established new procedural and liability rules for cases involving freight undercharges. On December 17, 1993, the ICC issued its decision in this case permitting the reopening of the record for defendants to assert any additional remedies provided by the newly enacted NRA. *Freeman Products, Inc. v. Rebel Motor Freight, Inc.*, No. MC–C–30015, slip. op. (I.C.C. Dec. 17, 1993). Presently before the court is Freeman's motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6), or alternatively for summary judgment pursuant to *Fed.R.Civ.P.* 56, Rebel's response, and Freeman's reply to that response.

In support of its motion to dismiss, Freeman relies on the newly enacted NRA, and the affidavit of D. Duane Freeman, President of Freeman Products, Inc. Where a motion to dismiss relies on matters outside the pleadings, that motion should be converted into a motion for summary judgment. *See Fed.R.Civ.P.* 12(b). Freeman's motion to dismiss relies on matters outside the pleadings, therefore it will be treated as a motion for summary judgment.

█ Generally, before converting a motion to dismiss into a motion for summary judgment, the court should provide reasonable notice to allow the plaintiff the opportunity to submit evidence in opposition. *Kopec v. Coughlin,* 922 F.2d 152, 153 (2d Cir.1991). However, where plaintiff responds to the motion to dismiss by also relying on evidence outside the pleadings and by suggesting to the court that the motion be treated as one for summary judgment, no notice is necessary, and no surprise should result from the conversion. *Emmons v. McLaughlin,* 874 F.2d 351, 356 (6th Cir.1989). Because both parties have relied on evidence outside the pleadings, the court converts Freeman's motion to dismiss into a motion for summary judgment.

█ The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law.

*Fed.R.Civ.P.* 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules ... designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 1). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

█ Upon a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (1986); *accord Matsushita Electric Industrial Co., Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Moreover, the movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be accomplished by showing there is a lack of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Once met, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. *Fed.R.Civ.P.* 56(e). To meet this burden, the non-movant must do more than present some evidence that there is a disputed issue. Rather, the non-movant must present sufficient admissible evidence upon which a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Where a disputed issue of material fact is presented by countervailing admissible evidence, the non-movant's version of such fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992).

Freeman argues that the NRA absolves it from any liability for freight undercharges demanded by Rebel in this case. Specifically, Freeman contends that pursuant to Section 2 of the NRA, 49 U.S.C. § 10701 was amended to add subsection (f) which sets forth certain procedures for resolving claims involving unfiled negotiated transportation rates. The relevant portion, subsection (f)(9), provides that small business concerns covered by the Small Business Act, 15 U.S.C. § 631 et seq., shall not be liable for freight undercharges. Freeman claims that it qualifies as a small business concern within the meaning of the statute and moves for summary judgment on that basis. Rebel's reply does not contest that Freeman is a small business and therefore exempt from liability, rather it challenges the constitutionality of the NRA.

## DISCUSSION

### 1. Small Business Exemption

The NRA identifies the Small Business Act ("the Act"), 15 U.S.C. § 631 et seq., as the controlling legislation on the qualification of businesses for the small business concern exemption. 49 U.S.C. § 10701(f)(9). The Act relies on the standard industrial classification codes set forth in 13 C.F.R. § 121.601 for determining the minimum number of employees, or minimum number of annual receipts, permitted to maintain small business status under the Act. *Id.* Defendants claim that they fall within the small business exemption because the total number of employees in both Freeman Products, Inc. and Freeman Drywall Company has never exceeded the requisite limit established by the classification codes. To support their assertions, defendants rely on the Affidavit of D. Duane Freeman, President of Freeman Products Inc., which addresses the applicable industrial classifications and the numbers of defendants' employees. Rebel does not dispute any of Freeman's factual assertions, nor that Freeman qualifies as a small business concern under the Act. Therefore, the court finds that no genuine dispute of material fact exists regarding Freeman's small business status.

■ The NRA's statutory scheme provides that once a defendant in an undercharge case proves it is a small business concern within the meaning of the statute, it is automatically exempt from liability. Because Freeman has successfully demonstrated that it is a small business, Freeman is not liable under the statute for the freight undercharges sought by Rebel in this action.

### 2. The Constitutional Arguments

#### a. Due Process Challenges

■ Rebel's opposition to the defendants' motion to dismiss raises several constitutional challenges to the NRA. Rebel asks this court to hold that an act of Congress violates the Due Process Clause of the Fifth Amendment and the Separation of Powers doctrine. Courts should refrain from judging the constitutionality of legislation unless it is absolutely necessary to the disposition of the case. *Burton v. United States,* 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905). Because the court has found sufficient grounds to grant defendants' motion for summary judgment on the small business exemption, the court is obliged to reach the constitutional question. However, the constitutional analysis will be confined to subsection (f)(9) of the NRA which absolves small business concerns from freight undercharge liability.

■ When called upon to judge the actions of a coequal branch of government, a federal court is required to grant a great deal of deference to the other branch's determinations. *Walters v. Nat. Assn. of Radiation Survivors,* 473 U.S. 305, 319, 105 S.Ct. 3180, 3188, 87 L.Ed.2d 220 (1985); *United States v. Nixon,* 418 U.S. 683, 703, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974). Therefore, the court begins its constitutional analysis by acknowledging the significant consideration that will be given to the fact that the NRA was enacted after serious debate in Congress.

■ The United States Constitution grants Congress the authority to make and change the laws. *U.S. Const.* art. I, § 8, cl. 18. This power extends to the enactment of retroactive legislation. *General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct.

1105, 117 L.Ed.2d 328 (1992); *United States v. Sperry Corp.*, 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989). However, because the Fifth Amendment prohibits the government from taking property without due process of law, retroactive legislation must meet due process standards. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984) ("The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process.").

 Courts have always maintained a presumption against retrospective application of new statutes in order to protect the public from injustice and unnecessary forfeiture. *Landgraf v. USI Film Products*, —— U.S. ——, ——, 114 S.Ct 1483, 1499, 128 L.Ed.2d 229 (1994). Only where Congress specifically tailors retroactive application of a statute to address a particular issue or crisis, and explicitly so provides, will the courts construe a statute to apply retrospectively. *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964) ("[A] retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the 'unequivocal and inflexible import of the terms and the manifest intention of the legislature.'" (quoting *Union Pac. R. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Here, Congress purposely enacted the NRA to deal with the undercharge crisis, and explicitly stated that the NRA would apply to pending lawsuits. *See* NRA § 2(c) ("The amendments made by subsection (a) [includes small business concern exemption] and (b) of this section shall apply to all claims pending as of the date of the enactment of this Act...."). Therefore, the court reads the NRA as applying retrospectively.

 Retrospective economic legislation is presumed constitutional, and the party complaining of the due process violation bears the burden of proving that no rational public purpose exists for enactment of the legislation. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984) (*citing Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) ("[I]t is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the court with a presumption of constitutionality....."). Congress was motivated by a rational public purpose when it enacted the NRA. The legislative history of the NRA suggests that the statute was passed to alleviate the litigation crisis created by freight motor carrier undercharge claims. *S.Rep. No. 79*, 103rd Cong., 1st Sess. (1993). Further, the NRA does provide, on a percentage basis, some reimbursement to carriers for freight undercharges. NRA §§ 2(a), (f)(2), (3), (4). Only small businesses and charitable concerns are completely exempt from undercharge liability under the NRA. Thus, the NRA's small business no liability rule was clearly intended by Congress to protect the financial vulnerability of smaller enterprises, and not as a means for allowing shippers to escape their contractual obligations.[2] *See S.Rep. No. 79*, 103rd Cong., 1st Sess. (1993) ("The Committee believes that special treatment for small business and charitable concerns is justified because these entities are less likely to be able to defray the costs of settling undercharge claims.").[3] The court

---

**2.** The constitutional prohibition on retrospective impairment of the obligations of contracts may have provided legitimate grounds for a constitutional challenge in this case. *See U.S. Const.* art. I, § 10, cl. 1. ("No State shall enter into any ... or pass any ... law impairing the obligation of contracts."). However, the plain language of the Contracts Clause makes it clear that it only applies to the states, and the federal courts have affirmed that interpretation. *See e.g., Peick v. Pension Benefit Guar. Corp.*, 724 F.2d 1247 (7th Cir.), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984) (Contracts Clause does not apply to federal government). Further, Con-

gress' authority under art. I, § 8, cl. 4 of the Constitution has been interpreted to authorize the retrospective impairment of contractual obligations. *United States v. Security Industrial Bank*, 459 U.S. 70, 74, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982).

**3.** For greater insight into Congress' intent with respect to the small business exemption, *see* 139 *Cong.Rec.* H9593–02, H9596 (daily ed. Nov. 15, 1993) (statement of Rep. Shuster):

I would like to give you an example of what has been happening to thousands of American

finds that shielding small businesses from financial ruin as a result of the freight undercharge crisis is rationally related to a legitimate governmental purpose.

■ Rebel also argues that the NRA violates the Equal Protection Clause of the Constitution by discriminating between operating and nonoperating carriers.[4] The court does not believe that the nonoperating carrier requirement applies in the context of the small business concern exemption. The plain language of the NRA states that in order to invoke subsections 2, 3, or 4 of the Act, the carrier must have ceased operating. NRA § 2(a), (f)(1). However, the small business concern exemption is contained in subsection 9, not subsections 2, 3, or 4. Nevertheless, in the interests of an exhaustive analysis, the court will discuss why the plaintiff's equal protection challenge fails.

■ The proper test for determining whether or not the NRA violates the Equal Protection Clause of the Fifth Amendment is whether the NRA is rationally related to a legitimate governmental purpose. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973) (holding that strict scrutiny standard for equal protection analysis triggered only when fundamental right or suspect class is implicated). Plaintiff does not contend, nor would the court find persuasive, that nonoperating carriers are members of a suspect class, or that a fundamental right is implicated in this case. Therefore, the court will apply a rational-basis analysis.

■ The rational-basis test is a relaxed standard that presumes legislative action to be valid. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Under a rational-basis standard, the regulation at issue need only bear some rational relationship to legitimate governmental purposes. *Jones v. Board of Commissioners of Alabama State Bar*, 737 F.2d 996, 1000 (11th Cir.1984). The party challenging the statute has the burden of demonstrating the absence of any rational basis for the legislation. *Id.*

■ As discussed previously, the court finds that Congress' passage of the NRA was rationally related to the legitimate governmental purpose of protecting smaller enterprises. The equal protection claim is therefore without merit. The court also rejects Rebel's allegations that Congress' enactment of the no liability rules under the NRA for freight undercharges is "arbitrary and capricious". Pl.'s Rep. to Def.'s Mot. to Dismiss at 7. Given the significant weight and deference attributed to an act of Congress, the high burden necessary to establish an economic due process violation and Congress' express intent to legislate retroactively to affect cases such as the one at issue, the court finds that plaintiff's due process challenges fail.

### b. *Separation of Powers*

■ Rebel argues that the NRA violates the Separation of Powers doctrine because it is legislation designed to retroactively overrule the Supreme Court. The Separation of Powers doctrine was clearly set forth by Chief Justice Taft in *J.W. Hampton & Co. v.*

companies and why so many feel so injured....
A small wholesale mom-and-pop carpet distributor with only 6 employees shipped carpet at a rate of 16 cents per yard—exactly the price they had agreed upon with the trucking firm hired to deliver it. The carpet was delivered, they paid the bill. End of story. Right? Wrong. Two years later the trucker went bankrupt and the trustee who was appointed for the firm found a higher charge for the shipment—a lot higher. This small firm, the kind that makes up the backbone of the American economy, was sued for $16,892 in undercharges for one small shipment. That made the freight charge $32 per yard for carpet that costs $1.79 to $6.99 per yard at the retail level.

That amounts to a more than 20,000–percent increase.

**4.** The Equal Protection Clause of the Fourteenth Amendment has been interpreted to apply to the federal government through the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499–500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954). The Supreme Court has consistently held that the "reach of the equal protection guarantee of the Fifth Amendment is coextensive with that of the Fourteenth." *United States v. Paradise*, 480 U.S. 149, 166, n. 16, 107 S.Ct. 1053, 1063, n. 16, 94 L.Ed.2d 203 (1987) (plurality opinion).

**1524**

*United States,* 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624 (1928):

> The rule is that in the actual administration of the government Congress or the Legislature should exercise the legislative power, the President or state executive, the Governor, the executive power, and the Courts or the judiciary the judicial power, and in carrying out that constitutional division into three branches it is a breach of the National fundamental law if [any branch gives up its powers to another].

*Id.* at 406, 48 S.Ct. at 351.

Rebel contends that the NRA usurps the power of the judiciary by overruling *Maislin Industries, U.S., Inc., v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). Rebel further asserts that Congress cannot sit as "the court of last resort," and therefore its passage of the NRA violated the separation of powers between the judicial and legislative branches of government.[5]

The Supreme Court has the power to interpret and enforce the laws. *U.S. Const.* art. III, § 2. Congress has the power to regulate commerce with foreign nations and among the states. *U.S. Const.* art. I, § 8. Therefore, the Supreme Court was within its powers when it interpreted the Interstate Commerce Act in *Maislin,* and Congress was within its powers when it passed the NRA amending the Interstate Commerce Act. Further, in *Maislin,* the Supreme Court itself acknowledges that it is "the responsibility of Congress to modify or eliminate these sections [that comprise the Interstate Commerce Act]." Therefore, the Supreme Court's interpretation of the Interstate Commerce Act, and Congress' legislative amendments to that Act, is a perfect demonstration of how a governmental system based on the separation of powers should operate. The court thus finds that the NRA does not violate the Separation of Powers doctrine.

For the reasons discussed above, defendants' motion for summary judgment is granted. Accordingly, a judgment dismissing this action with prejudice shall be entered.

IT IS SO ORDERED.

---

**5.** Rebel's allegations under the Separation of Powers doctrine focus on Congress' passage of a statute that *retroactively* overrules the Supreme Court. Pl.'s Rep. to Def.'s Mot. to Dismiss 7–8. This raises the same retroactivity issue addressed earlier in the due process discussion. The court has already held that the NRA's retroactive application is constitutional.