[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 350.]

BIELAT, EXR., APPELLANT, *v.* BIELAT, APPELLEE.

[Cite as *Bielat v. Bielat*, 2000-Ohio-451.]

*Uniform Transfer-on-Death Security Registration Act—R.C. 1709.09(A) and 1709.11(D) as applied to pay-on-death beneficiary designation in an Individual Retirement Account created prior to the Act's effective date do not violate prohibition against retroactive laws in Ohio Constitution— Requirements for claim of substantive retroactivity of statute.*

1. R.C. 1709.09(A) and 1709.11(D) of Ohio's Transfer-on-Death Security Registration Act, as applied to the pay-on-death beneficiary designation in an Individual Retirement Account created prior to the Act's effective date, do not violate the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution.

2. A claim for substantive retroactivity cannot be based solely upon evidence that a statute retrospectively created a new right, but must also include a showing of some impairment, burden, deprivation, or new obligation accompanying that new right. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 107, 522 N.E.2d 489, 496, modified.)

(No. 98-2386–Submitted September 15, 1999–Decided January 5, 2000.)

APPEAL from the Court of Appeals for Summit County, No. 18930.

————————————

{¶ 1} This case concerns the legal effect of two actions taken by a decedent prior to the effective date of Ohio's Transfer-on-Death Security Registration Act. First, in 1983, Chester S. Bielat opened an Individual Retirement Account ("IRA") with Merrill Lynch, Pierce, Fenner & Smith, Inc. In the "Adoption Agreement" that he signed to open this account, Chester named his sister, Stella, as the beneficiary of the account's balance upon his death. Shortly thereafter, Chester

made a will containing a clause giving all of his property to his wife, Dorothy, upon his death.

{¶ 2} In 1993, three years before Chester's death, the General Assembly codified Ohio's version of the Uniform Transfer-on-Death Security Registration Act ("Act"), R.C. 1709.01 *et seq*., 145 Ohio Laws, Part II, 2858. The Act provides, *inter alia*, that "[a]ny transfer-on-death resulting from a registration in beneficiary form * * * is *not testamentary*." (Emphasis added.) R.C. 1709.09(A). Accordingly, the Act removes such transfers on death from the decedent's *testamentary* estate, and also from the purview of Ohio's Statute of Wills, which outlines the formalities that apply to *testamentary* dispositions. R.C. 2107.03. R.C. 1709.11(D) makes the entire Act applicable to registrations in beneficiary form made "prior to, on, or after the effective date of this section, by decedents dying prior to, on, or after that date." R.C. 1709.11(D).

{¶ 3} Soon after Chester's death in 1996, Dorothy discovered that Chester had named Stella the beneficiary of his IRA. Dorothy filed a complaint in the Summit County Probate Court, seeking a declaratory judgment that she, not Stella, was entitled to the IRA proceeds. Dorothy's argument to the probate court consisted of four steps. First, Dorothy argued that Chester's IRA beneficiary clause constituted testamentary language when it designated Stella as the pay-on-death beneficiary of the account. Second, Dorothy argued that the beneficiary clause was, therefore, null and void, since the Adoption Agreement in which the clause appeared did not comply with the signature and attestation requirements of our Statute of Wills. Third, even though R.C. 1709.09(A), *supra*, defines beneficiary registrations such as this one as "not testamentary," Dorothy argued that the Act could not *constitutionally* apply retroactively to Chester's IRA beneficiary clause, which was signed a decade prior to the effective date of the Act. Finally, Dorothy averred that without the Act to validate the beneficiary clause in the IRA, the IRA

2

account balance would be transferred not to Stella, but rather to Chester's probate estate, where it would pass to Dorothy under the terms of Chester's will.

{¶ 4} After considering Dorothy's declaratory judgment action and Stella's motion to dismiss, the probate court concluded that the Act validated the nontestamentary transfer-on-death clause in Chester's IRA even though the beneficiary designation in the IRA was created before the effective date of the Act. Therefore, the probate court ordered the balance of the IRA to pass to Stella under the terms of the beneficiary clause that Mr. Bielat had signed in 1983.

{¶ 5} Dorothy appealed this judgment to the Ninth District Court of Appeals. She argued that the application of the Act to the pay-on-death beneficiary registration that Chester executed prior to the Act's effective date constituted a retroactive application of the law in violation of Section 28, Article II of the Ohio Constitution. The court of appeals affirmed the probate court's decision in favor of Stella. The court held that although the Act was being applied in this case to a transfer-on-death beneficiary clause executed before the Act's effective date, the Act did not impair a vested right belonging to Dorothy, and thus did not violate the Ohio Constitution's prohibition against retroactive laws.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

———————————

*Joseph C. McLeland* and *Terence E. Scanlon*, for appellant.

*Witschey & Witschey Co., L.P.A., Frank J. Witschey* and *Jeffrey T. Witschey*, for appellee.

———————————

**Cook, J.**

{¶ 7} The issue before the court is whether R.C. 1709.09(A) and 1709.11(D) of Ohio's Transfer-on-Death Security Registration Act constitute retroactive laws in violation of Section 28, Article II of the Ohio Constitution when

applied to the designation of a death beneficiary in an IRA executed prior to the effective date of the Act. Because we conclude that the applicable sections of R.C. Chapter 1709 constitute remedial, curative statutes that do not affect substantive rights, we affirm the judgment of the court of appeals and uphold the validity of the beneficiary clause in the IRA Adoption Agreement executed between Mr. Bielat and Merrill Lynch.

The Test for Unconstitutional Retroactivity

{¶ 8} Section 28, Article II of the Ohio Constitution prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154, 162. The retroactivity clause nullifies those new laws that "reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]." *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749, 752.

{¶ 9} This court has articulated the procedure that a court should follow to determine when a law is *unconstitutionally* retroactive. *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570, 576, citing *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. We emphasize the phrase "*unconstitutionally* retroactive" to confirm that retroactivity itself is not always forbidden by Ohio law. Though the language of Section 28, Article II of the Ohio Constitution provides that the General Assembly "shall have no power to pass retroactive laws," Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or "retrospectively") and those that do so in a manner that offends our Constitution. See, *e.g.*, *Rairden v. Holden* (1864), 15 Ohio St. 207, 210-211; *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d at 576-577. We also note that the words "retroactive" and "retrospective" have been used interchangeably in the constitutional analysis for more than a century. *Id*. Both terms describe a law that

is "made to affect acts or facts occurring, or rights accruing, before it came into force." Black's Law Dictionary (6 Ed.1990) 1317.

{¶ 10} The test for unconstitutional retroactivity requires the court first to determine whether the General Assembly expressly intended the statute to apply retroactively. R.C. 1.48; *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d at 576, citing *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph one of the syllabus. If so, the court moves on to the question of whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial. *Cook* at 410-411, 700 N.E.2d at 577. Dorothy argues that Ohio's Transfer-on-Death Security Registration Act is both expressly retroactive *and* substantive. In Part I of this opinion, we engage in the first step of the analysis and find that the Act expressly applies retroactively. In Part II, however, we conclude that the retroactivity of R.C. 1709.09(A) and 1709.11(D) comports with the Ohio Constitution because these provisions are remedial and curative rather than substantive.

I

{¶ 11} Because R.C. 1.48 establishes a presumption that statutes are prospective in operation, our inquiry into whether a statute may constitutionally be applied retrospectively continues only after a threshold finding that the General Assembly expressly intended the statute to apply retrospectively. *State v. Cook*, 83 Ohio St.3d at 410, 700 N.E.2d at 576, citing *Van Fossen*, *supra*, at paragraph one of the syllabus. In this case, by its own terms, R.C. Chapter 1709 applies to registrations of securities made "prior to, on, or after" the effective date of the Act. R.C. 1709.11(D). When R.C. 1709.09(A) and 1709.11(D) are read together, therefore, the Act declares that transfers on death resulting from those registrations in beneficiary form described therein are *always* nontestamentary, even if such registrations were made before the statute's effective date. The Act became effective on October 1, 1993, and Chester designated Stella as his IRA beneficiary

a decade earlier, in 1983. The General Assembly expressly intended for the Act to reach back in time and apply to Chester's 1983 designation of Stella as his IRA beneficiary.

II

{¶ 12} The second critical inquiry of the constitutional analysis is to determine whether the retroactive statute is remedial or substantive. *State v. Cook*, 83 Ohio St.3d at 410-411, 700 N.E.2d at 577. A purely remedial statute does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively. *Id.* at 411, 700 N.E.2d at 577. On the other hand, a retroactive statute is substantive—and therefore *unconstitutionally* retroactive—if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction. *Id.* In Part A, below, we conclude that R.C. 1709.09(A) and 1709.11(D) constitute remedial, curative statutes that merely provide a framework by which parties to certain investment accounts can more readily enforce their intent to designate a pay-on-death beneficiary. In Part B, we support our conclusion that the relevant sections of the Act are remedial by demonstrating that because the statutes do not impair vested rights, impose new duties, or create new obligations, they cannot be construed as substantive provisions for purposes of the constitutional prohibition against retroactive laws.

A

{¶ 13} In our view, R.C. 1709.09(A) and 1709.11(D) constitute remedial provisions that merely affect "the methods and procedure by which *rights are recognized, protected and enforced, not * * * the rights themselves.*" (Emphasis added.) *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 208, 39 N.E.2d 148, 151. Our conclusion is supported by cases that have defined remedial laws as those that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *State v. Cook*, 83 Ohio St.3d at

411, 700 N.E.2d at 577. Legislation is remedial, and therefore permissibly retroactive, when the legislation seeks only to avoid "the necessity for multiplicity of suits and the accumulation of costs [or to] promote the interests of all parties." *Rairden v. Holden*, 15 Ohio St. at 211.

{¶ 14} Consistent with the tests for remedial legislation articulated in *Weil, Cook,* and *Rairden*, 15 Ohio St. 207, the relevant provisions of R.C. Chapter 1709 remedially recognize, protect, and enforce the contractual rights of parties to certain securities investment accounts to designate a pay-on-death beneficiary. Before the Act, Ohio courts did not consistently recognize and enforce similar rights. For example, when a decedent's certificates of deposit were made payable on death to his daughters, the decedent's wife successfully argued that the beneficiary designation in the certificates constituted an "ineffectual attempt at a testamentary disposition of the deposits involved." *In re Estate of Atkinson* (P.C.1961), 85 Ohio Law Abs. 540, 542, 175 N.E.2d 548, 549. In order to enforce a bank depositor's passbook death beneficiary designation, Ohio courts developed a requirement that the depositor open the account jointly with the named beneficiary so that the beneficiary shared a present joint interest in the account. *Cleveland Trust Co. v. Scobie* (1926), 114 Ohio St. 241, 151 N.E. 373, syllabus. In the absence of such a present interest in the account, if the pay-on-death obligation extended to a third-party beneficiary, the courts deemed the transfer to be testamentary. See *Atkinson*, *supra*, 85 Ohio Law Abs. at 544, 175 N.E.2d at 550, citing Rowley, Living Testamentary Dispositions and the Hawkins Case (1929), 3 U.Cin.L.Rev. 361, 389.

{¶ 15} R.C. 1709.09(A) and 1709.11(D) remedially changed Ohio law, therefore, by resolving a conflict between the relatively informal beneficiary designation found in an IRA and the more rigid formalities required by the Statute of Wills for testamentary dispositions. By avoiding this conflict, the Act promotes the interests of the parties to the securities accounts by validating the beneficiary designation as originally agreed. The statutes do not directly affect the rights of the

parties to the securities accounts; rather, as *Weil* and *Rairden* permit, they simply protect what the parties intended to be non-probate investments. Realizing that many pay-on-death beneficiary registrations were made prior to 1993, the General Assembly made the Act retroactive to recognize, protect, and enforce even those beneficiary registrations executed before then. R.C. 1709.11(D).

{¶ 16} Our conclusion that R.C. 1709.09(A) and 1709.11(D) are remedial is strengthened by our state's recognition of the validity of retrospective *curative* laws. As this court noted long ago, the language that immediately follows the prohibition of retroactive laws contained in Section 28, Article II of our Constitution expressly permits the legislature to pass statutes that " 'authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers, by *curing omissions, defects, and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state*.' " (Emphasis added.) *Burgett v. Norris* (1874), 25 Ohio St. 308, 316, quoting Section 28. *Burgett* recognized that curative acts are a valid form of retrospective, remedial legislation when it held that "[i]n the exercise of its plenary powers, the legislature * * * could cure and render valid, by remedial retrospective statutes, that which it could have authorized in the first instance." *Id.* at 317.

{¶ 17} *Burgett* reflects exactly what the General Assembly did when it enacted the disputed portions of the Act in the present case. R.C. 1709.09(A) and 1709.11(D) are remedial statutes designed to cure a conflict between the pay-on-death registrations permitted in the Act and the formal requirements of our Statute of Wills. In the exercise of its power to " 'prescribe to whom property may be given by will * * * and what species of interest will be wholly exempt from testamentary disposition,' " *Ostrander v. Preece* (1935), 129 Ohio St. 625, 632, 3 O.O. 24, 27, 196 N.E. 670, 673, quoting 1 Underhill on Wills (1900) 23, Section 16, the General Assembly saw fit to retrospectively resolve exactly the type of conflict between the law of contracts and the law of wills that Dorothy asserts here.

8

As *Burgett* and our Constitution expressly permit, R.C. 1709.09(A) and 1709.11(D) harmlessly cure a potential defect or omission in the beneficiary clause of Chester's IRA and remove a potential legal obstacle to its fulfillment, by obviating a potential conflict between that pay-on-death transfer and the Statute of Wills.

### B

{¶ 18} Our conclusion that R.C. 1709.09(A) and 1709.11(D) are remedial is supported by the fact that the Act patently lacks the characteristics of unconstitutionally *substantive* legislation. To clarify our view that the disputed legislation is not substantive, we shall dispose of Dorothy's arguments in two distinct parts. First, Dorothy argues that the statutes are unconstitutionally substantive because they retroactively *impair her rights*. In Part 1, below, we find that R.C. 1709.09(A) and 1709.11(D) do not retroactively impair any vested rights that Dorothy can claim in the IRA proceeds. Second, Dorothy argues that the statutes are unconstitutionally substantive because they *create a new right*. In Part 2, below, we respond to this argument in two ways. Initially, we refute Dorothy's assertion that the statutes retroactively create a new right. We then examine the test for substantive laws in *Van Fossen* to determine whether a statute that merely *creates a new right* can violate the prohibition against retroactive laws without a reciprocal showing that some impairment, burden, or obligation accompanied the alleged new right.

### 1

{¶ 19} We disagree with Dorothy's contention that R.C. 1709.09(A) and 1709.11(D) retrospectively impaired her rights and are thus unconstitutional substantive laws. Dorothy claims that by reaching back in time and declaring Chester's 1983 beneficiary clause to be nontestamentary, the Act impaired her "right" as the sole beneficiary of Chester's will to take the IRA account balance as part of Chester's probate estate upon his death. Dorothy correctly notes that the constitutional limitations on laws affecting substantive rights prohibit statutes that

take away or impair rights, create new obligations, impose new duties, or attach new disabilities with respect to transactions already past. *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d at 496, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630, 633.

{¶ 20} Ohio courts have consistently held, however, that in order for a retroactive law to unconstitutionally impair a right, not just any asserted "right" will suffice. One recent case required a showing of impaired "vested rights," *State v. Cook*, 83 Ohio St.3d at 411, 700 N.E.2d at 577, while another required evidence of "accrued substantive right[s]" that are impaired by the retrospective Act. *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 61 O.O.2d 295, 290 N.E.2d 181, paragraph three of the syllabus. The syllabus of *Van Fossen*, a frequently cited version of the retroactivity test, states the test in terms of "substantive rights." *Id.*, 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraph four of the syllabus. Another decision interpreted *Van Fossen* to address impairments of "vested substantive right[s]." *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 807. In *Matz,* we held that "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, *unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality*." (Emphasis added.) *Id.* We find that R.C. 1709.09(A) and 1709.11(D) did not retroactively impair a vested right, a substantive right, or even a "reasonable expectation of finality" that Dorothy could claim in regard to Mr. Bielat's IRA proceeds.

{¶ 21} Dorothy cannot claim a vested right to the proceeds of the IRA under the law of contracts, for she was in no way connected to the IRA Adoption Agreement that Mr. Bielat executed with Merrill Lynch. Dorothy was not a party to the 1983 IRA Agreement, nor was she a third-party beneficiary or assignee of Stella's contingent rights as a designated beneficiary of the account balance. The Adoption Agreement signed by Mr. Bielat and Merrill Lynch placed valid

contractual obligations upon them, with Merrill Lynch bound to pay the IRA balance to the beneficiary that Chester designated. Accord *Aetna Life Ins. Co. v. Schilling* (1993), 67 Ohio St.3d 164, 167, 616 N.E.2d 893, 895. The IRA Adoption Agreement created no rights or obligations for Dorothy. Dorothy thus had no vested *contractual* right impaired by the retroactive application of the disputed statutes; she had no contractual rights to impair.

{¶ 22} Likewise, at the time of the Act's effective date, Dorothy had no vested right to the IRA proceeds as the sole beneficiary under Chester's will. This court has held that "[u]ntil a * * * will has been probated * * *, the legatee under such will has no rights whatever. A mere expectation of property in the future is not a vested right." *Carpenter v. Denoon* (1876), 29 Ohio St. 379, 386. See, also, *Ostrander v. Preece*, 129 Ohio St. at 632, 3 O.O. at 27, 196 N.E. at 673 ("An heir apparent * * * has no vested right in the estate of his ancestor prior to the latter's death"); accord *Kirsheman v. Paulin* (1951), 155 Ohio St. 137, 143, 44 O.O. 134, 137, 98 N.E.2d 26, 30; *In re Estate of Millward* (1957), 166 Ohio St. 243, 2 O.O.2d 61, 141 N.E.2d 462. Because Dorothy's asserted "rights" as an expectant beneficiary of Chester's estate did not vest until his death in 1996, her claim that the 1993 Act retroactively impaired her vested rights is untenable. If Dorothy had no vested rights in the contract that Mr. Bielat executed with Merrill Lynch, and no vested rights in Chester's probate estate until his death, then the Act did not impair any vested rights of hers when it applied retrospectively to validate the pay-on-death beneficiary clause in Chester's preexisting contract with Merrill Lynch.

2

{¶ 23} In addition to her claim that the applicable portions of R.C. Chapter 1709 retroactively impaired her rights, Dorothy also argues that the Act was substantive, since it *created a new right*. To support this claim, Dorothy seizes upon a phrase found in *Van Fossen*'s version of the test for substantive laws that prohibits, in addition to laws that impair and burden vested rights or create new

obligations, laws that "create a new right."  *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d at 496.  First, we do not agree that the relevant statutory provisions, in fact, created a new right.  More important, we believe that Dorothy misinterprets the "create a new right" phrase found in *Van Fossen*'s test for substantive laws.  Despite some language to the contrary, *Van Fossen* does not stand for the proposition that the retrospective creation of a new right, standing alone, satisfies the test for substantive laws.  We address these two points separately below.

{¶ 24} First, we conclude that the relevant statutory provisions did not retrospectively "create a new right."  Dorothy contends that by reaching back in time to change  pre-1993 law regarding securities accounts, and by removing pre-1993 beneficiary registrations from the requirements of the Statute of Wills, the Act retroactively conferred a power or "right" on Chester that he could not have exercised in its absence.  Though we agree that the Act retroactively *removed a potential legal obstacle* to the enforcement of Mr. Bielat's contract with Merrill Lynch, and promoted the interests of the parties to that contract, we do not agree that this constitutes the "creation of a right" for purposes of the retroactivity analysis.  Accord *In re Application of Santore* (1981), 28 Wash.App. 319, 324, 623 P.2d 702, 706.  As this court stated in *Weil*, *supra*, a curative Act simply affects the recognition, protection, and enforcement of preexisting rights—not the rights themselves*.  Weil v. Taxicabs of Cincinnati*, *Inc.,* 139 Ohio St. at 205, 22 O.O. at 208, 39 N.E.2d at 151.

{¶ 25} We also believe that Dorothy has misinterpreted the test for substantive laws found in *Van Fossen*.  Even if it could be said that the Act "created a new right" when it retrospectively authorized Chester to bypass the formalities of our Statute of Wills, a close examination of the test for substantive laws in *Van Fossen* reveals that a claim for substantive retroactivity cannot be based solely upon evidence that a statute created a new right.  Rather, a claim for substantive

retroactivity must also include a showing of some impairment, burden, deprivation, or new obligation accompanying that new right.

{¶ 26} As we stated previously, the constitutional test for substantive legislation focuses on new laws that reach back in time and create new burdens, deprivations, or impairments of vested rights. See *Cook*, *Van Fossen*, *Vogel v. Wells*, and *Miller v. Hixson*, *supra*. It is true, as Dorothy notes in her brief, that the test for substantive laws found in *Van Fossen* and recently reaffirmed in *State v. Cook* also mentions an additional type of substantive law—a law that "creates a new right." *State v. Cook*, 83 Ohio St.3d at 411, 700 N.E.2d at 577, citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d at 496. In those cases cited by *Van Fossen* as providing examples of substantive laws creating new rights, however, the question of whether the relevant law was substantive was resolved not solely with reference to the alleged creation of a new right, but also with an inquiry into whether the creation of rights in one party reciprocally impaired a right of the party challenging the retroactive law. In other words, substantive, retroactive legislation that unconstitutionally creates a new right also impairs a vested right or creates some new obligation or burden as well. The cases cited by *Van Fossen* show that the "create a right" language found in that case's test for substantive laws is incomplete and must be tied to a reciprocal burdening.

{¶ 27} *State ex rel. Crotty v. Zangerle* (1938), 133 Ohio St. 532, 11 O.O. 226, 14 N.E.2d 932, cited by Dorothy in support of her argument that R.C. Chapter 1709 substantively "created a new right," illustrates how this language from *Van Fossen*'s test can be misinterpreted. The *Van Fossen* court cited *Crotty* as an example of a case where a statute was deemed to be substantive, since it retroactively created a new right. *Van Fossen*, 36 Ohio St.3d 100 at 107, 522 N.E.2d at 496. The statute at issue in *Crotty* provided for a county's refunding of legally assessed and properly paid tax penalties paid between 1930 and 1937. Though the statute thus arguably "created a new right" by creating a new legal

avenue to the recovery of penalties, this court, quoting at length from a prior case on similar facts, found the statute to be unconstitutionally retroactive because it " '*imposed upon [the county] an obligation * * * that did not attach to the transaction when it occurred.*' " (Emphasis added.) *Id.* at 536, 11 O.O. at 228, 14 N.E.2d at 934, quoting *Hamilton Cty. Commrs. v. Rosche* (1893), 50 Ohio St. 103, 113, 33 N.E. 408, 410. We find it significant that in the principal case cited by the appellant as an example of unconstitutional retroactivity resulting from the *creation of a right*, this court justified its finding of unconstitutionality with language regarding the *new obligation* on the county to remit funds from previous tax years. *Id.* The *Crotty* court, therefore, did not hold that any "new right" of the property owners to claim and perhaps recover the funds was the true source of the statute's substantive retroactivity. Rather, the *Crotty* decision turned on the more familiar theme of retrospective impairment, burden, deprivation, or obligation.

{¶ 28} Like *Crotty,* other decisions cited by *Van Fossen* as examples of substantive laws that "create" or "give rise to" new rights were decided primarily on the basis of retrospective impairment, burden, deprivation, or obligation. For example, in *State ex rel. Slaughter v. Indus. Comm.* (1937), 132 Ohio St. 537, 543, 8 O.O. 531, 534, 9 N.E.2d 505, 508, this court upheld an amendment to the Workmen's Compensation Act on the basis that it was a remedial statute not intended to "*deprive* an aggrieved party of his 'day in court.*' " (Emphasis added.) Like *Crotty*, *Slaughter* thus focused on deprivation—not the creation—of a right in its test for substantive laws. In another case cited by *Van Fossen* as an example of substantive laws that "give rise to or take away" rights, this court upheld an amendment that shortened the statute of limitations for personal injury suits. *Smith v. New York Cent. RR. Co.* (1930), 122 Ohio St. 45, 170 N.E. 637. We did so, however, on the basis of our conclusion that the amendment had not "taken away altogether*"* vested rights to that cause of action. *Id.* at 51, 170 N.E. at 639.

**{¶ 29}** As *Crotty*, *Slaughter*, and *Smith* demonstrate, the test for substantive legislation cited in *Van Fossen* may mislead by implying that the retroactive creation of a new right, standing alone, suffices to make out a case for substantive unconstitutionality. In *Crotty*, the statute was nullified not simply because it may have created a new right, but because it imposed a new obligation. In *Slaughter* and *Smith*, the statutes at issue were *upheld* because they did *not* retrospectively deprive, impair, burden, or oblige.[1]

**{¶ 30}** The test for retroactive substantive laws should focus, then, as it has historically, on the impairment or deprivation of rights, the creation of new obligations, or the attachment of new disabilities. *Rairden v. Holden*, 15 Ohio St. at 210. It is for this reason that Justice Story's seminal test for retrospective laws, cited for more than a century with approval by this court, is not triggered solely by the retrospective "creation of a new right."[2] Likewise, the tests for retroactive laws

---

1. The two remaining cases cited in *Van Fossen* as examples of substantive laws that gave rise to or took away rights were decided in 1847, before our Constitution of 1851 even contained the prohibition against retroactive laws. See *Johnson v. Bentley* (1847), 16 Ohio 97; *Lewis v. McElvain* (1847), 16 Ohio 347.

2. Ohio adopted Justice Story's formulation of the retroactivity test in *Rairden v. Holden* (1864), 15 Ohio St. 207, 210, and this court noted its durability in *Van Fossen*, 36 Ohio St.3d at 106, 522 N.E.2d at 496, fn. 8. In 1814, Justice Story defined an unconstitutional retrospective law as "every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Soc. for the Propagation of the Gospel v. Wheeler* (C.C.N.H.1814), 22 F.Cas. 756, 757.

in the federal system[3] and the tests for substantive laws in other states[4] do not apply to legislation that merely "creates a new right."

{¶ 31} We hold, therefore, that R.C. 1709.09(A) and 1709.11(D) do not retrospectively create a new right. Even if such an argument were plausible, Dorothy can allege no impairment of rights or imposition of new obligations that would satisfy the tests for substantive legislation as they are properly understood. A claim for substantive retroactivity cannot be based solely upon evidence that a statute retrospectively created a new right, but must also include a showing of some impairment, burden, deprivation, or new obligation accompanying that new right. Accordingly, we conclude that R.C. 1709.09(A) and 1709.11(D) do not constitute substantive laws because they do not retrospectively impair vested rights, impose new duties, or create new obligations.

III

{¶ 32} In her Fifth Proposition of Law, Dorothy advances an argument separate from her retroactivity claim. Dorothy submits that to resolve this dispute,

---

3. The United States Constitution's prohibition of retroactive laws is contained exclusively in the *Ex Post Facto* Clause, Clause 3, Section 9, Article I, which pertains only to penal statutes. *California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 505, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588, 594. The Constitution grants Congress the authority to make and change the laws, which extends to the enactment of retroactive legislation. See *Gen. Motors Corp. v. Romein* (1992), 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328, 340. Therefore, in the civil context, a claim of unconstitutional retroactivity under the United States Constitution implicates the Due Process Clause of the Fifth Amendment, which prohibits state action *depriving* someone of a life, liberty, or property interest without a rational basis for doing so. See *id.*; *Rebel Motor Freight v. Freeman Drywall Co.* (W.D.Tenn. 1994), 914 F.Supp. 1516, 1521-1522.

4. New York approved the definition of "retrospective laws" from Black's Law Dictionary, Third Edition, which read, "Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." *In re Wacht's Estate* (1942), 32 N.Y.S.2d 871, 877. Similarly, the tests for substantive laws in Illinois and Michigan lack any mention of laws that merely "create a new right." See *Hughes v. Judges' Retirement Bd.* (1979), 407 Mich. 75, 85, 282 N.W.2d 160, 163-164; *United States Steel Credit Union v. Knight* (1965), 32 Ill.2d 138, 142, 204 N.E.2d 4, 6. For a survey of the tests in many other states, see 16A Corpus Juris Secundum (1984) 306-317, Constitutional Law, Sections 390-393.

we should apply the law in effect at the time Mr. Bielat executed his will, since that is the law that frames the intent of the testator. *Cent. Trust Co. of N. Ohio v. Smith* (1990), 50 Ohio St.3d 133, 136, 553 N.E.2d 265, 270. Dorothy argues that since Chester executed his will prior to the existence of the Act, he must have done so with the expectation that the designation of Stella as the transfer-on-death beneficiary of his IRA was void, since the Act was not yet in place to explicitly validate it. We are not persuaded by this argument. *Cent. Trust* represents a correct statement of the law of interpreting wills, but we are not interpreting Chester's will in this case. This is not a will contest action, where the true intent of the testator may be at the heart of the dispute, nor is it a situation where an unclear testamentary provision requires construction by the court. Rather, we are faced with two equally unambiguous acts by Mr. Bielat: (1) the designation of his sister Stella as the beneficiary of his IRA in his contract with Merrill Lynch, and (2) the clause in his will leaving all of his property to Dorothy.

IV

{¶ 33} In addition to holding that the Act did not violate the Ohio Constitution's prohibition against retroactive laws, the court of appeals agreed with Stella that federal law preempted the Ohio Statute of Wills by expressly permitting an individual to designate a pay-on-death beneficiary in an IRA, citing Section 408, Title 26, U.S.Code. Because we conclude that Chester's pay-on-death registration was valid under Ohio law, there is no need to apply the Supremacy Clause to validate the registration under federal law as well. See *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 141, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256 (holding that the Supremacy Clause nullifies state law to the extent that state law *actually conflicts* with federal law).

{¶ 34} For the foregoing reasons, we hold that R.C. 1709.09(A) and 1709.11(D) of Ohio's Transfer-on-Death Security Registration Act, as applied to the pay-on-death beneficiary designation in an Individual Retirement Account

created prior to the Act's effective date, do not violate the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution.

*Judgment affirmed.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately in judgment.

F.E. SWEENEY, J., concurs in judgment only.

_____

**DOUGLAS, J., concurring.**

{¶ 35} While the majority opinion is interesting, and even useful in further clarifying *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, much of the discussion in the opinion is unnecessary to resolve the simple issue in this case. The syllabus of this case should read: "Rights and obligations created by a contract, valid at its inception, remain in full force and effect notwithstanding subsequently enacted legislation. Ohio residents have a common-law right to name a beneficiary in an IRA contract."

{¶ 36} In *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 253, 231 N.E.2d 301, 305-306, we said that "[t]he right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation.

{¶ 37} "A rule of law which would sanction the renunciation of a bargain purchased in freedom from illegal purpose, deception, duress, or even from misapprehension or unequal advantage * * * leads inexorably to individual irresponsibility, social instability and multifarious litigation."

{¶ 38} In the case at bar, Chester Bielat entered into a valid contract with Merrill Lynch. The contract designated a beneficiary. Pursuant to the common law, Bielat had an absolute right to pass his personal property by way of contract,

naming a third party as beneficiary. So long as the contract between the parties remained unchanged, Merrill Lynch had an obligation to honor Bielat's designation. See, *e.g., Aetna Life Ins. Co. v. Schilling* (1993), 67 Ohio St.3d 164, 616 N.E.2d 893. For me, that ends this case and any superfluous discussion that could be construed to lead to a different conclusion is not well taken.

RESNICK, J., concurs in the foregoing concurring opinion.

_____