OPINION
Appellant, Heather Kerby, appeals from a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
Hallie Kerby, born July 1, 1996, is the daughter of Heather Kerby and Henry Bell. On October 31, 1997, the Hamilton Police Department removed Hallie from her mother's home in response to allegations that she had cigarette burns on her forehead and legs. On November 4, 1997, BCCSB filed a complaint alleging that Hallie was a neglected, dependent, and abused child. Specifically, the complaint stated that BCCSB had received numerous referrals alleging that appellant was abusing prescription drugs, leaving Hallie with her grandmother who also abused prescription drugs and who was unable to care for Hallie, and that family members had reported that Hallie had received numerous cigarette burns to her body. Although appellant claimed that the alleged burn marks were chicken pox scars, an exam by Children's hospital indicated that the marks were not consistent with chicken pox.
An adjudication hearing was held on February 19, 1998. Appellant was served with a notice of the hearing, but failed to appear as she was incarcerated and did not make arrangements to be represented at the hearing. Henry Bell, Hallie's father, also failed to appear, or make any appearance in this proceeding. As a result of evidence adduced at the hearing, the trial court determined that Hallie was an abused, neglected and dependent child.
Hallie was placed in the temporary custody of her aunt, Paige Hurd. Hallie remained with Hurd until April 14, 1998, when she was placed in foster care after Hurd indicated that she could no longer care for Hallie. Hallie remained with her foster mother for the duration of this matter.
BCCSB filed a motion for permanent custody on April 12, 1999. A hearing was held on July 14, 1999, and on July 28, 1999, the trial court issued a decision granting BCCSB permanent custody of Hallie and terminating appellant's parental rights and responsibilities. Appellant appeals, raising three assignments of error.
Assignment of Error No. 1:
 The Trial Court erred in applying the most recent version of O.R.C. § 2151.414, effective March 18, 1999, T.d. 64, pp. 4-5, in permissively granting the Butler County Children's Services Board's motion for permanent custody, due to the fact that the proceedings in the Trial Court were initiated prior to the effective date of the statute.
In her first assignment of error, appellant contends that R.C.2151.414, as amended by H.B. 484, effective March 18, 1999, may not be applied retroactively to a pending permanent custody case.
When ruling upon a motion for permanent custody, a trial court should usually apply the version of the statute in effect at the time that the motion for permanent custody was filed. SeeWoodward v. Eberly (1958), 167 Ohio St. 177; In re: Douglas Seal
(Mar. 16, 1998), Clermont App. No. CA97-07-066. In the present case, the motion for permanent custody was filed April 1, 1999. The filing occurred after the amendment to the statute took effect, and the trial court accordingly applied R.C. 2151.414 as amended by H.B. 484. However, appellant insists that the application of the amended statute to the present proceeding violates the constitutional ban against retroactive legislation because the proceedings which ultimately resulted in termination of appellant's parental rights began prior to the amendment.
Section 28, Article II, of the Ohio Constitution states that "[t]he General Assembly shall have no power to pass retroactive laws." A statute is presumed to be prospective in its operation unless expressly made retrospective. R.C. 1.48. However, appellant concedes, and this court has previously held, that the amendment in question was intended to be applied retroactively. See In re Oza Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported.
We are left then to consider whether the legislation violates the Ohio Constitution's prohibition against retroactive legislation. The constitutional prohibition against retroactive laws applies only to laws of a substantive nature and not to laws of a procedural or remedial nature. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107; Kilbreath v. Rudy
(1968), 16 Ohio St.2d 70. This court has previously noted that "the application of a statute affecting procedural rights to all causes tried after the effective date of the statute `constitutes prospective operation as, in such instances, the date of the trial is the reference point from which prospectivity and retroactivity are measured.'" Dunn v. Dunn (Mar. 27, 2000), Warren App. No. CA99-09-103, unreported, at 8-9, quoting Rumery v. Myles (1983), Henry App. No. 7-83-1, unreported.
A statute is substantive in nature if "it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." Bielat v. Bielat (2000), 87 Ohio St.3d 350,354, citing State v. Cook (1998), 83 Ohio St.3d 404, 411. A statute is remedial in nature if it affects only the remedy provided or merely substitutes a new or more appropriate remedy for the enforcement of an existing right. Van Fossen,36 Ohio St.3d at 107-108.
This court has held that R.C. 2151.414 is a statute that affects a substantial right. See In re Oza Rodgers (June 5, 2000), Preble App. No. CA99-08-017, unreported. Natural parents have a constitutionally protected liberty interest in the care and custody of their children. Id.; Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759.
While R.C. 2151 affects a substantial right in that it provides the mechanism through which parental rights may be terminated, we disagree that the amendment at issue makes a substantive change in the permanent custody statute. The changes that H.B. 484 made to R.C. 2151.414 did not change parents' fundamental liberty interest in the care of their children. Long before the enactment of H.B. 484, the General Assembly had established the permanent custody process, which legally terminates parental rights to care for children. H.B. 484 only changed the method and procedure by which the court is to determine whether parental rights are to be terminated.
A remedial statute affects "the methods and procedure by which rights are recognized, protected and enforced, not * * * the rights themselves." Bielat, 87 Ohio St.3d at 354, quoting Taxicabs ofCincinnati, Inc. (1942), 139 Ohio St. 198. Therefore, the amendments to R.C. 2151.414 are remedial in nature, and retroactive application of this law does not violate appellant's rights under the Ohio Constitution. R.C. 2151.414, as amended by H.B. 484, does not violate the provisions of the Ohio or United States Constitutions with regard to retroactive application of substantive laws. Rodgers at 12. Accordingly, the first assignment of error is overruled.
Assignment of Error No. 2:
 The trial court erred in making a mandatory finding that Heather Kerby lacked parental fitness. T.d. 64, pp. 4-5.
In her second assignment of error, appellant contends that the trial court erred by finding that Hallie was an abused and neglected child at the February 19, 1998 adjudication hearing.
A trial court's finding of dependency, neglect, and abuse, and award of temporary custody at an adjudication hearing is a final, appealable order. In re Murray (1990), 52 Ohio St.3d 155, syllabus; In re Caputo (Apr. 13, 1998), Butler App. No. CA97-02-032, unreported, at 3. In order to initiate an appeal, a party must file a notice of appeal "within thirty days of the date of the order or judgment appealed from." App.R. 4. Appellant's failure to timely appeal the February 19, 1998 decision and order precludes consideration of this assignment of error. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 The trial court erred in deciding that the placement of Hallie Kerby in the permanent custody of the Butler County Children's Services Board was in the best interest of the child. T.d. 64, pp. 204.
In her final assignment of error, appellant contends that the trial court's finding that granting permanent custody to BCCSB was in Hallie's best interest is not supported by clear and convincing evidence, and is therefore against the manifest weight of the evidence.
Because a parent's constitutionally protected liberty interest is at stake in a permanent custody case, due process requires that the state prove by clear and convincing evidence that applicable statutory standards have been met. Santosky, 455 U.S. at 769. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Id. at 479.
When determining whether the termination of parental rights is in the child's best interest, the trial court is required to examine all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D). The trial court made specific findings related to each of these factors and concluded that Hallie's best interest was served by granting permanent custody to BCCSB.
Hallie lived with appellant from her birth on July 1, 1996 until November 4, 1997. Since that time, Hallie has spent fewer than thirty hours with appellant due to appellant's incarceration and drug dependency. Hallie was removed from appellant's care because appellant was unable to provide adequate shelter, food, and care due to her drug dependency. Appellant left Hallie in the care of her grandmother, who is also drug dependent, and who was unable to adequately care for Hallie. At the time her removal, Hallie had cigarette burns on her legs.
After she was removed from her mother, Hallie lived with an aunt until April 14, 1998. From that time forward, she was in foster care. At the time of the permanent custody hearing, Hallie had been in foster care approximately fourteen months, and had not lived with her mother for eighteen months. The evidence indicated that Hallie is presently thriving in her foster home and has developed a strong bond with her foster mother. Hallie considers her foster mother to be her mother, and her foster home to be her home. Hallie's foster mother would like to adopt her and there appear to be no impediments to the adoption.
Appellant has consistently demonstrated her love and attachment to her daughter during the time that she has been in an intensive drug rehabilitation program. However, appellant has a long history of drug dependency, and has previously been in recovery programs with only limited success.
Although Hallie interacts well with appellant, Hallie has no notable attachment to her mother and the relationship remains superficial. Hallie is an unusually open child, willing to attach herself to anyone, even strangers, and this openness was extended to appellant. We finally note that Hallie's guardian ad litem
recommended that BCCSB be granted permanent custody.
Based on the foregoing facts, we find that the trial court's finding that it is in Hallie's best interest to grant BCCSB permanent custody is amply supported by clear and convincing evidence. The third assignment of error is overruled.
POWELL, P.J., and VALEN, J., concur.