SMITH, Appellant,

v.

SMITH, Appellee.

[Cite as *Smith v. Smith*, 157 Ohio App.3d 778, 2004-Ohio-3552.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–03–12.

Decided July 6, 2004.

Steven M. Powell, for appellant.

John C. Filkins, for appellee.

---

SHAW, Judge.

{¶ 1} The appellant, Shirley E. Smith, appeals from the May 12, 2003 judgment of the Common Pleas Court, Juvenile Division, Hancock County, Ohio, overruling her motion to declare R.C. 3111.13 unconstitutional.

{¶ 2} Between December 1986 and February 1987, Shirley and the appellee, Matthew L. Smith, were involved in a sexual relationship.[1] On October 27, 1987, Shirley gave birth to a son, Anthony, but never directly informed Matthew that Anthony was his child. However, nearly ten years later, on September 26, 1997, Shirley initiated paternity proceedings against Matthew. Subsequent DNA testing revealed that Matthew was the father of Anthony. Thereafter, the trial court found that Matthew was Anthony's father and ordered that he begin paying child support for Anthony in the amount of $440.41 per month, as well as

---

1. Although Shirley and Matthew share a common last name, they were never married to each other.

arrearages for the previous ten years totaling $41,833.06, to be paid at the rate of $44.33 per month.

{¶ 3} Matthew appealed that decision to this court on October 29, 1998, asserting, inter alia, that the doctrine of laches prevented Anthony's mother from seeking child support based upon her ten-year delay in pursuing the parentage action. Although this court held that the trial court erred in its calculation of support and remanded the case to correct this error, we also determined that the trial court did not err in refusing to apply the doctrine of laches. *Smith v. Smith* (Mar. 10, 1999), 3d Dist. No. 5–98–35, 1999 WL 181190. On remand, the trial court recalculated the current and past child support figures from the time of Anthony's birth through July 31, 1999, which required Matthew to pay $338.94 per month in current support and $100 per month for the $44,960.09 he owed in arrearages. This entry was filed by the court on December 16, 1999.

{¶ 4} On August 27, 2002, Matthew filed a "Motion to Set Aside or Otherwise Terminate and Extinguish the Arrearages Established for the Time Period Between Date of Birth of the Child Until and Including July 31, 1999." The basis for this motion was the amendment of R.C. 3111.13(F)(3)(a), which went into effect on October 27, 2000. This amendment allowed for modifications of existing orders for back child support when a parentage action was not initiated before a child attained the age of three years and the alleged father did not know or have reason to know that he was the father of the child at issue. R.C. 3111.13(F)(3)(a) and (c). In response to this motion, counsel for Shirley filed a motion for declaratory relief, asking the court to declare R.C. 3111.13 unconstitutional. Notice of this motion was also served upon the Ohio Attorney General as required by R.C. 2721.12. A hearing was held on Shirley's motion, and the magistrate declined to find the statute unconstitutional. Although Shirley objected to the magistrate's decision, the trial court overruled these objections on May 12, 2003. This appeal followed, and Shirley now asserts two assignments of error:

{¶ 5} "The trial court erred in not declaring O.R.C. § 3111.13 unconstitutional as violating the Ohio Constitution, Section 28, Article II, ban on retroactive application.

{¶ 6} "The trial court erred in not declaring O.R.C. § 3111.13 unconstitutional as violating the Ohio Constitution, Section 5(B), Article IV, separation of powers doctrine."

{¶ 7} This court's analysis of these issues begins by noting that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 146, 57

O.O. 134, 128 N.E.2d 59. Thus, the Supreme Court of Ohio has held "enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." Id. In addition, "[a]ny doubt as to the constitutionality of a statute will be resolved in favor of its validity." Id. at 149, 57 O.O. 134, 128 N.E.2d 59, citing *State ex rel. Doerfler v. Price* (1920), 101 Ohio St. 50, 128 N.E. 173.

{¶ 8} The Ohio Constitution "prohibits the General Assembly from passing retroactive laws and protects vested rights from new legislative encroachments." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 352, 721 N.E.2d 28, citing Section 28, Article II, Ohio Constitution; *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 99, 566 N.E.2d 154. However, "Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or 'retrospectively') and those that do so in a manner that offends our Constitution." *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28, citing *Rairden v. Holden* (1864), 15 Ohio St. 207, 210–211; *State v. Cook* (1998), 83 Ohio St.3d 404, 410, 700 N.E.2d 570.

{¶ 9} In order to determine whether a statute is unconstitutionally retroactive, the first step is "to determine whether the General Assembly expressly intended the statute to apply retroactively." *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28. This question must be answered first based upon R.C. 1.48, which provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." In fact, an "[i]nquiry into whether a statute may be constitutionally applied retrospectively continues only after an initial finding that the General Assembly expressly intended that the statute be applied retrospectively." *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 14, citing *Van Fossen v. Babcock Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph two of the syllabus; *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28; *State ex rel. Kilbane v. Indus. Comm.* (2001), 91 Ohio St.3d 258, 259, 744 N.E.2d 708.

{¶ 10} In the case sub judice, the statute at issue states that a court is prohibited from ordering the payment of back child support if the child was over the age of three at the time the parentage action was first filed and "the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child." R.C. 3111.13(F)(3)(a)(i) and (ii). Division (F)(3) further states that "[a] party is entitled to obtain modification of an existing order for arrearages under this division regardless of whether the judgment, court order, or administrative support order from which relief is sought *was issued prior to, on, or after October 27, 2000.*" (Emphasis added.) R.C. 3111.13(F)(3)(c). Thus, by electing to use the language "prior to," the General Assembly expressly intended that the statute reach back in time and apply to the order for back support that was issued prior to the enactment of R.C. 3111.13(F)(3). See *Bielat*,

87 Ohio St.3d at 353–354, 721 N.E.2d 28.  Therefore, there is an express intention that this section be applied retrospectively.  Accordingly, we proceed to the next step in the test for unconstitutional retroactivity.

{¶ 11} The next issue to be determined is whether the statute is substantive or remedial.  *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28.  If a statute is retroactive and substantive, then it violates the constitutional prohibition against retroactivity.  Id. at 353, 721 N.E.2d 28.  However, if a retroactive statute is merely remedial, then it does not offend the Ohio Constitution and will not be declared invalid.  Id. at 354, 721 N.E.2d 28.

{¶ 12} A statute is substantive "if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction."  Id., citing *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570.  To the contrary, a remedial statute merely affects "the methods and procedure by which rights are recognized, protected and enforced, not * * * the rights themselves."  *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148.  Such laws do not violate the Ohio Constitution because the General Assembly is permitted to "authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."  Section 28, Article II, Ohio Constitution.  Thus, this court is called upon to determine whether R.C. 3111.13(F)(3) impairs or affects any vested or substantive rights.

{¶ 13} The Fifth District Court of Appeals recently addressed a similar issue regarding the back payment of child support and determined that R.C. 3111.13(F) was unconstitutional.  See *Dixon v. Walcutt*, 152 Ohio App.3d 372, 2003-Ohio-1667, 787 N.E.2d 1237.  However, in *Dixon*, the mother of the child filed a complaint for retroactive child support against the child's father ten days prior to the effective date of R.C. 3111.13(F), but the trial court had yet to issue an order for arrearages before the statutes effective date.  Id. at ¶ 2.  Those circumstances are unlike the facts in the case sub judice, where the order for arrearages was issued, and subsequently affirmed by this court, well before the effective date of the statute.  Thus, *Dixon* is not entirely dispositive of the case presently before us, and we expressly decline to adopt the full scope of the *Dixon* holding at this time.  Nevertheless, we find that the underlying rationale of the holding in *Dixon*, when applied to the facts of this case, has merit.

{¶ 14} In *Dixon*, the court stated that it could "imagine no other right greater than the right of a child to have the support of his/her father."  Id. at ¶ 22.  The court further noted that this right has been consistently recognized in Ohio "as

evidenced by R.C. 2919.21, which governs offenses against the family, including nonsupport of dependents." Id. Thus, the Fifth District held that the retroactive application of R.C. 3111.13(F) was unconstitutional because it "affect[ed] a substantive right and takes away the child's right to support." Id.

{¶ 15} As touched upon in *Dixon*, the right to support from one's parent has been consistently upheld by the courts of this state. See, e.g., *Haskins v. Bronzetti* (1992), 64 Ohio St.3d 202, 203, 594 N.E.2d 582; *State ex rel. Wright v. Indus. Comm.* (1943), 141 Ohio St. 187, 25 O.O. 277, 47 N.E.2d 209, paragraph one of the syllabus. Further, the right to support is legislatively mandated. For instance, R.C. 3103.03, entitled "Support obligations of married persons and of parents of minor child," states that "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A). This section also permits any other person to support an unemancipated child if a parent of that child neglects to do so "and recover the reasonable value of the necessaries supplied from the parent who neglected to support the minor child." R.C. 3103.03(D).

{¶ 16} The Revised Code also provides methods for calculating support, including the minimum amount of permissible support. See R.C. Chapter 3119. In addition, the Revised Code creates an entire system for the collection and disbursement of child support, which includes the establishment of a governmental agency to assist in this endeavor and the ability to enforce wage withholdings in order to ensure that children are given support from their parents. See R.C. Chapter 3121. Furthermore, R.C. 2919.21 prohibits a parent from failing "to provide adequate support to * * * [t]he person's child who is under age eighteen, or mentally or physically handicapped child who is under age twenty-one." R.C. 2919.21(A)(2). Moreover, a violation of this section constitutes a misdemeanor of the first degree on a first offense, R.C. 2919.21(G)(1), which is punishable by up to six months of incarceration and/or fines up to $1,000. R.C. 2929.21(B)(1) and (C)(1). Thus, these enactments created not only a statutory right of a child to support from his/her parents but also a comprehensive plan to enforce the right.

{¶ 17} In sum, both common and statutory law provided Anthony with the right to support from his parents. See *Haskins*, 64 Ohio St.3d at 205, 594 N.E.2d 582. Such a right is certainly substantive given the infirmity of children to support themselves. Id. at 203, 594 N.E.2d 582, citing *Pretzinger v. Pretzinger* (1887), 45 Ohio St. 452, 458, 15 N.E. 471, overruled on other grounds by *Meyer v. Meyer* (1985), 17 Ohio St.3d 222, 17 OBR 455, 478 N.E.2d 806. Furthermore, this right also vested once the trial court issued its 1998 and, upon remand, 1999 judgments, finding that Anthony was entitled to support for the years prior to the initiation of the paternity action and determining the amount owed. By enacting a statute that reaches back in time and destroys Anthony's previously adjudicated

right to support, the General Assembly violated the constitutional prohibition of enacting retroactive, substantive legislation. Therefore, we find the retroactive application of R.C. 3111.13(F)(3), regarding the termination of the order to pay back child support, to be unconstitutional.

{¶ 18} In addition, we note the dissent's view that under the facts of this case, Shirley's right to reimbursement for the support of Anthony is all that is affected by R.C. 3111.13(F)(3). If that were true, then laches should surely attach to bar the claim of any mother who deliberately waited ten years to inform the father of the existence of the child, and then seeks such reimbursement. However, the fact remains that she had a statutory right to reimbursement at the time that she sought arrearages. See, e.g., *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113; *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328. Moreover, both the trial court and this court on appeal determined that her action to recover arrearages was not barred by the doctrine of laches and further ordered that Shirley was entitled to arrearages from Matthew well before the effective date of R.C. 3111.13(F)(3). Thus, Shirley's right to reimbursement was not only in existence but was also *fully adjudicated* prior to the legislative enactment of R.C. 3111.13(F)(3). Therefore, we conclude that under these circumstances, even the right to reimbursement has become a substantive right, and the legislature's destruction of this fully accrued and adjudicated right was unconstitutional. See *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 58–59, 61 O.O.2d 295, 290 N.E.2d 181. Nevertheless, we would emphasize that this decision should not be construed in any way as prohibiting the *prospective* application of the statute but, rather, merely addresses and prohibits the *retroactive destruction of a previously adjudicated right.*

{¶ 19} For these reasons, the first assignment of error is sustained, rendering the second assignment of error moot. Accordingly, the judgment of the Common Pleas Court, Juvenile Division, Hancock County is overruled, and the cause is remanded for further proceedings in accordance with law.

Judgment reversed
and cause remanded.

CUPP, J., concurs.

THOMAS F. BRYANT, J., dissents.

THOMAS F. BRYANT, Judge, dissenting.

{¶ 20} I dissent from the majority opinion for the following reasons. The majority finds R.C. 3111.13(F)(3) to be unconstitutional because it affects the right of a child to be supported by his parents. I disagree because the issue is not the child's right to be supported. The child has already received support

from his mother and perhaps others. Instead, the issue is the right of the mother to recover for the support she furnished the child before the father learned of the existence of his child and of his duty to support him or her.

{¶ 21} R.C. 3111.13(F)(3) limits the time from which an arrearage of support can be calculated to three years, providing that the father did not know of the paternity and had no reasonable method of knowing. This means that no notice of paternity was given to the father and that he could not reasonably have determined from the circumstances that he is the father of the child. In an ideal world, only couples in a committed relationship would be having children, and fathers would know whether or not and when they had a child. However, in reality, sometimes either circumstances or the mother's conscious choice to conceal the fact prevents the father from learning that he has a child to support. The mother is the person best in a position to establish the paternity of the child. If she chooses to prevent the establishment of a father-child relationship, she is, in effect, choosing to forgo the father's assistance to support the child. She always has the ability to file a paternity action for financial support by the father. By limiting the amount of arrearage that can be calculated to three years, the legislature is limiting only the mother's right to reimbursement.

{¶ 22} In this case, Shirley and Matthew were engaged in a relationship between December 1986 and February 1987. Eight months later, Shirley gave birth to Anthony but did not tell Matthew that he had a son. Shirley waited almost ten years to initiate paternity proceedings. When Matthew was found to be the father, he was ordered to pay future monthly child support and ten years of back child support in the cumulative amount of $41,833.06. The statute would have limited this amount to only three years' worth of back child support, which is actually a reimbursement to Shirley for the amounts she expended in support-ing Anthony during a reasonable time within which to seek contribution by Matthew.

{¶ 23} This case was not brought by a child for his support but by another who provided support for the child in years past while taking no action to seek assistance from a father. This is not a support case but an action akin to a creditor's bill for recovery for necessaries advanced in support of a needy dependent. Thus, I see no constitutional infirmity in a statute limiting the time in which an action must be brought against a parent for past support by one with superior knowledge of the duty to support.

{¶ 24} Laches does not attach to the child's right, but to that of the creditor. The child has been supported in the years past. If the mother did not think she was fully supporting the child, she had the ability to seek support earlier by filing a paternity action at an earlier time. I do not view this statute any differently from any other statute limiting the creditor's remedy for recovery of a stale debt.