**BOARD OF TRUSTEES OF THE TOBACCO USE PREVENTION AND CONTROL FOUNDATION; AMERICAN LEGACY FOUNDATION ET AL., APPELLANTS, *v.* BOYCE, TREASURER, ET AL., APPELLEES.**

**[Cite as *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207.]**

*Constitutional law — Custodial accounts — Retroactivity Clause — Contract Clauses — Tobacco Use Prevention and Cessation Trust Fund — Reallocation of funds — 2008 Sub.H.B. No. 544.*

(No. 2010-0118 — Submitted July 6, 2010 — Decided December 22, 2010.)

APPEAL from the Court of Appeals for Franklin County,

Nos. 09AP-768, 09AP-769, 09AP-785, 09AP-786, 09AP-832, and 09AP-833,

185 Ohio App.3d 707, 2009-Ohio-6993.

_____

**PFEIFER, ACTING C.J.**

**{¶ 1}** The issue in this case is whether certain sections of 2008 Am.Sub.S.B. No. 192 ("S.B. 192") and 2008 Sub.H.B. No. 544 ("H.B. 544") are constitutional. We conclude that the sections are constitutional and affirm the judgment of the court of appeals.

**Factual and Procedural Background**

**{¶ 2}** In November 1998, the Ohio attorney general entered into a master settlement agreement ("MSA") with the largest tobacco-product manufacturers in the United States that resolved litigation to recover healthcare expenses incurred by the states as a result of tobacco-related illnesses. Pursuant to the MSA, Ohio was to receive $10.1 billion in payments through 2025; there was no restriction on how the money could be spent.

**{¶ 3}** In 2000, the General Assembly enacted Am.Sub.S.B. No. 192, 148 Ohio Laws, Part V, 10767, creating R.C. Chapter 183. The new law distributed proceeds from the MSA to eight different funds, including $235 million to the newly created Tobacco Use Prevention and Cessation Trust Fund. Money from the trust fund was to be appropriated to an endowment fund, which was to "be in the custody of the treasurer of state but * * * not be a part of the state treasury." Former R.C. 183.08, 148 Ohio Laws, Part V, at 10785. The endowment fund was to fund programs and research related to tobacco-use prevention and cessation. Former R.C. 183.07, 148 Ohio Laws, Part V, at 10784. Former R.C. 183.08 directed that a newly created Tobacco Use Prevention and Control Foundation ("foundation") would serve as trustee of the endowment fund.

**{¶ 4}** On April 2, 2008, the governor and legislative leaders announced a bipartisan agreement to spend state funds to stimulate the economy. The agreement called for reallocating approximately $230 million then in the endowment fund to the stimulus package. On April 8, 2008, the General Assembly passed S.B. No. 192, which liquidated the endowment fund. On the same day, the executive director of the foundation, pursuant to a motion passed by the board of the foundation, executed a contract with American Legacy Foundation ("ALF") to transfer $190 million from the endowment fund to ALF. The following day, the foundation filed a complaint against the treasurer seeking to enjoin the enforcement of S.B. 192 and asking that the statute be declared unenforceable. The board then rescinded its resolution authorizing the $190 million transfer to ALF. ALF moved to intervene as a plaintiff in the lawsuit brought by the foundation and filed a complaint requesting a declaration that H.B. 192 be declared unconstitutional and an injunction to stop the state treasurer from transferring the money in the endowment fund to the jobs fund.

**{¶ 5}** On May 6, 2008, the General Assembly enacted H.B. 544, which abolished the foundation and gave the Ohio Department of Health ("ODH") responsibility for any residual matters, including legal obligations. Section 4 of H.B. 544 directed the state treasurer to liquidate the endowment fund, deposit the lesser of $40 million or 14.8 percent of the proceeds into the state treasury to the credit of a tobacco-use-prevention fund, and deposit the remaining proceeds from the liquidation (approximately $190 million) into the state treasury to the credit of a jobs fund. On May 9, 2008, ALF amended its complaint to contest the constitutionality of H.B. 544 as well as S.B. 192.

**{¶ 6}** On May 27, 2008, Robert G. Miller Jr. and David W. Weinmann, former smokers who had participated in the foundation's cessation programs, filed a complaint for declaratory relief, claiming that the enactment of R.C. Chapter 183 and the transfer of money into the endowment fund had created a trust that the General Assembly did not have the power to change. Miller and Weinmann claimed that they were beneficiaries of the trust because they were participants in programs funded by the foundation, and they sought a judgment declaring that (1) H.B. 544 is unconstitutional under the Contract Clauses of Section 10, Article I of the Constitution of the United States and Section 28, Article II of the Ohio Constitution and (2) H.B. 544 illegally attempts to appropriate nontreasury funds in breach of an irrevocable trust. Their action was consolidated with ALF's lawsuit in May 2008.

**{¶ 7}** On August 11, 2009, the trial court entered judgment against ALF, finding that the contract between it and the foundation was invalid. The court also entered final judgment for Miller and Weinmann on their claims, finding that the endowment fund was an irrevocable trust and that the portions of H.B. 544 that transferred money from the endowment fund violated the Retroactivity Clause of Section 28, Article II of the Ohio Constitution and the Contract Clauses of the

3

United States and Ohio Constitutions. Accordingly, the trial court permanently enjoined the state of Ohio, the treasurer, the attorney general, and ODH ("appellees") from enforcing any provision of H.B. 544 and S.B. 192 that related to the endowment fund.

{¶ 8} On appeal, the court of appeals held that the endowment fund was not an irrevocable charitable trust and that appellees had no vested rights that could be violated. *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 185 Ohio App.3d 707, 2009-Ohio-6993, 925 N.E.2d 641, ¶ 41-46. The court reasoned that the appellants offered no authority supporting the proposition that custodial funds, once created, cannot be abolished or transferred by the General Assembly. Id. at ¶ 34 (a custodial account is an account that is in the custody of the treasurer of the state but that is not part of the state treasury. R.C. 113.05(B). For an example, see former R.C. 183.08(A)). The court also affirmed the decision of the trial court that the contract between ALF and the foundation was invalid, stating that the resolution approving the contract had been improperly discussed only in executive session, in violation of R.C. 121.22, Ohio's Open Meetings Act, and thus the executive director had no authority to enter into the contract with ALF. Id. at ¶ 27.

{¶ 9} We accepted the discretionary appeal of Miller, Weinmann, and ALF ("appellants").

**Analysis**

{¶ 10} The General Assembly has plenary power to enact legislation; it is limited only by the Ohio Constitution and the Constitution of the United States. Section 1, Article II, Ohio Constitution. See *Williams v. Scudder* (1921), 102 Ohio St. 305, 307, 131 N.E. 481. "[B]efore any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision." Id. See *Lehman v. McBride* (1863), 15 Ohio St.

4

573, 592 (when the power of the General Assembly to enact a law is questioned, the proper inquiry is whether the law is clearly prohibited by the Constitution). Our inquiry, then, is whether the portions of H.B. 544 and S.B. 192 liquidating the endowment fund and placing the money in the jobs fund are clearly prohibited by the Ohio Constitution.

{¶ 11} The General Assembly's legislative power enables it to "pass any law unless it is specifically prohibited by the state or federal Constitutions." *State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas* (1967), 9 Ohio St.2d 159, 162, 38 O.O.2d 404, 224 N.E.2d 906. See *State ex rel. Poe v. Jones* (1894), 51 Ohio St. 492, 504, 37 N.E. 945 ("whatever limitation is placed upon the exercise of that plenary grant of [legislative] power must be found in a clear prohibition by the constitution"). No constitutional amendment was adopted in Ohio restricting the use of the tobacco settlement money. In the absence of a constitutional provision, the General Assembly had the power to change the use of the settlement money by enacting H.B. 544 and S.B. 192.

*The Retroactivity Clause*

{¶ 12} Section 28, Article II of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." In *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus, this court stated, "The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." See *Smith v. Smith*, 109 Ohio St.3d 285, 2006-Ohio-2419, 847 N.E.2d 414, at ¶ 6, quoting *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 ("To determine whether a law is unconstitutionally retroactive, we must first 'determine whether the General Assembly expressly intended the statute to apply retroactively' "). Appellants argue that Section 4 of H.B. 544 clearly indicates that the act is

retrospective in its application. However, the language of Section 4 does not indicate that the General Assembly expressly intended the act to apply retroactively. Instead, the language demonstrates the General Assembly's intention that the act be applied prospectively: "Notwithstanding any provision of law to the contrary, on the effective date of this section, the Treasurer of State shall liquidate the Tobacco Use Prevention and Control Foundation Endowment Fund created by section 183.08 of the Revised Code in a prudent manner. The Treasurer of State shall deposit into the state treasury to the credit of the Tobacco Use Prevention Fund (Fund 5BX0), which is created in section 3701.841 of the Revised Code, the lesser of \$40 million or 14.8 per cent of the proceeds from liquidation. The Treasurer of State shall deposit the remaining proceeds from liquidation into the state treasury to the credit of the Jobs Fund (Fund 5Z30), which is hereby created."

{¶ 13} On its face, the statute applies only from the date of its enactment, not to acts, events, or cases that predate its enactment. *Van Fossen*, 36 Ohio St.3d at 105, 522 N.E.2d 489. In *E. Liverpool v. Columbiana Cty. Budget Comm.*, 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, ¶ 31, we stated that "when the application of a statute to the case before us involves only a prospective operation, we will not entertain a retroactivity claim under Section 28, Article II. *State v. Hawkins* (1999), 87 Ohio St.3d 311, 314, 720 N.E.2d 521. That doctrine bars East Liverpool's retroactivity claim."

{¶ 14} The doctrine bars appellants' claim in this case. We have also stated that the "retroactivity clause nullifies those new laws that 'reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].' *Miller v. Hixson* (1901), 64 Ohio St. 39, 51, 59 N.E. 749, 752." *Bielat*, 87 Ohio St.3d at 352-353, 721 N.E.2d 28. In *Van Fossen*, this court stated that the constitutional limitation against retroactive laws

" 'include[s] a prohibition against laws which commenced on the date of enactment and which operated in futuro, but which, in doing so, divested rights, particularly property rights, which had been vested anterior to the time of enactment of the laws.' " 36 Ohio St.3d at 105, 522 N.E.2d 489, quoting Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence (1936), 20 Minn.L.Rev. 775, 781-782. In *E. Liverpool*, after stating that the law operated prospectively, this court addressed East Liverpool's contention "that the statute 'permitted the retrospective extinguishment of East Liverpool's * * * preexisting legal right under former R.C. 5747.53 and 5747.63.'" 114 Ohio St.3d 133, 2007-Ohio-3759, 870 N.E.2d 705, at ¶ 33. Accordingly, we now address appellants' claim that H.B. 544 extinguished their preexisting property rights.

*Does H.B. 544 Affect Preexisting Property Rights?*

{¶ 15} Appellants first argue that the funds held by the foundation do not belong to the state, citing former R.C. 183.08(A), which stated that the "endowment fund * * * shall be in the custody of the treasurer of state but shall not be a part of the state treasury." According to appellants, the creation of a custodial account that was not part of the state treasury indicated that the General Assembly intended to create a trust setting the funds permanently outside the control of future legislation.

{¶ 16} Although the General Assembly's plenary legislative power is expansive, it is not all-inclusive. It does not include the ability to bind future General Assemblies. "No general assembly can guarantee the continuity of its legislation or tie the hands of its successors." *State ex rel. Public Institutional Bldg. Auth. v. Griffith* (1939), 135 Ohio St. 604, 619, 14 O.O 533, 22 N.E.2d 200. This court relied on *State ex rel. Fletcher v. Executive Council of the State of Iowa* (1929), 207 Iowa 923, 223 N.W. 737, 740, in which the Supreme Court of Iowa stated that "no General Assembly has power to render its enactment irrevocable

and unrepealable by a future General Assembly. No General Assembly can guarantee the span of life of its legislation beyond the period of its biennium. The power and responsibility of legislation is always upon the existing General Assembly. One General Assembly may not lay its mandate upon a future one. Only the Constitution can do that. * * * The power of a subsequent General Assembly either to acquiesce or to repeal is always existent."

{¶ 17} In Section 17 of S.B. 192, 148 Ohio Laws, Part V, at 10802, the General Assembly acknowledged "the right of each General Assembly to evaluate independently the budgetary priorities of the state." Furthermore, the creation of custodial accounts is a rather routine business. R.C. 113.05(B). State appropriations that are not spent by an agency must be returned to the funds from which the appropriations were made at the end of the appropriation period. R.C. 131.33. The General Assembly uses custodial accounts to operate outside the strictures of R.C. 131.33. We consider the creation of a custodial account evidence that the General Assembly did not expect all the funds appropriated to the foundation to be spent within the biennium and that it did not want the unexpended funds to revert pursuant to R.C. 131.33.

{¶ 18} Custodial accounts have been used in a variety of circumstances without violating the Constitution or removing the funds from the reach of the General Assembly. In *Griffith*, we stated that although payments made by patients in state-run hospitals might be used by the Department of Public Welfare to run the hospitals it operated, those payments were "public funds, at all times subject to legislative control." 135 Ohio St. at 619, 14 O.O. 533, 22 N.E.2d 200. Even if the payments were earmarked by the Department of Public Welfare to pay off bonds issued to provide money for the repair or construction of state welfare institutions, the General Assembly could default on the bonds and "divert these funds to other purposes." Id.

{¶ 19} In *State ex rel. Hoffman Candy & Ice Cream Co. v. Defenbacher* (1951), 154 Ohio St. 429, 43 O.O. 351, 96 N.E.2d 295, we examined the rotary fund of the Department of Liquor Control, the funds of which were not in the state treasury but were in the custody of the state treasurer. We noted that pursuant to statute, funds in excess of those necessary for operating the department were to "be paid into the general revenue fund." Id. at 431. Appellants also argue that once the General Assembly appropriated the funds to the foundation fund, the funds were spent and thus were beyond the reach of subsequent legislation. This argument makes sense only if the foundation is a trust, which we conclude it is not. It is axiomatic than an appropriation to a state agency is not an expenditure; thus appropriation of money to the foundation does not place the money beyond the reach of the General Assembly.

{¶ 20} Appellants also argue that by allowing the money in the endowment fund to be invested in corporate stocks, the General Assembly intended that the fund not be considered state money because the Constitution prohibits the investment of state funds in corporate stocks. Although this argument is plausible, the better explanation is that the General Assembly allowed unexpended funds to be invested in stocks because it knew that expenditures in the biennium would be significantly less than the appropriation. Generally, state funds must be spent within the biennium in which they are appropriated, and thus cannot be invested in corporate stocks, which are long-term investments. Investing the money in the endowment fund in corporate stocks allows the foundation to augment the fund. Allowing the endowment fund to be invested in stocks is not evidence of the creation of a trust.

{¶ 21} Several states have passed constitutional amendments preventing the reallocation of funds that were allocated from the proceeds of the MSA to tobacco-use cessation and prevention. Section 27, Article X, Florida Constitution;

Section 18, Article VII, Idaho Constitution; Section 10.8, Article VII, Louisiana Constitution; Section 4, Article XII, Montana Constitution; Section 40, Article X, Oklahoma Constitution. The Ohio Constitution, however, has not been amended to prevent the reallocation of tobacco-settlement proceeds, although it has been amended to ensure that lottery revenue is used solely for educational purposes, Section 6, Article XV, Ohio Constitution.

{¶ 22} Appellants have compared the foundation with various state pension plans. They argue that the foundation and the pension plans are similar, but they are not. The endowment fund is not intended for the benefit of named beneficiaries; the pension plans allocate funds for the benefit of named beneficiaries. The retirement boards were given authority to establish separate legal entities to hold funds, see, e.g., R.C. 145.11, the foundation was not. We conclude that the foundation and the various pension plans are not equal.

{¶ 23} There is a long-standing principle in American law that "[n]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *New York Cent. RR. Co. v. White* (1917), 243 U.S. 188, 198, 37 S.Ct. 247, 61 L.Ed. 667. See Fuller, The Morality of Law (1964) 60 (if reliance on existing law made a person "secure against any change in legal rules, the whole body of our law would be ossified forever"). No irrevocable trust was created; indeed, no trust was created. Instead, we conclude that in 2000, a state agency was created that was abolished in 2008. We conclude that the law enacted in 2000 did not create a right that was terminated by H.B. 544 and, therefore, that H.B. 544 is not an unconstitutionally retroactive law.

*Contract Clause*

{¶ 24} Section 10, Article I, United States Constitution states, "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

Section 28, Article II, Ohio Constitution states, "The general assembly shall have no power to pass * * * laws impairing the obligation of contracts * * *."

{¶ 25} Appellants make two contract-clause arguments. The first is that because the foundation is a trust, reallocating the funds appropriated to the endowment fund is a violation of a trust contract. We reject this argument based on our conclusion that the foundation is not a trust.

{¶ 26} The second argument addresses the attempt by the foundation to place funds beyond the reach of the General Assembly by transferring approximately $190 million to ALF. Appellants contend that the foundation and ALF entered into a contract for the transfer of funds and therefore that H.B. 544 violates that contract by not allowing the transfer called for by the contract. For the following reasons, we conclude that there is no violation of the state and federal contract clauses because no contract was formed.

{¶ 27} R.C. 121.22(A) states, "This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."

{¶ 28} R.C. 121.22(H) states, "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section."

{¶ 29} The trial court and the court of appeals concluded that the board had violated R.C. 121.22 because the resolution to contract with ALF resulted from nonpublic deliberations. *Tobacco Use Prevention & Control Found.*, 185 Ohio App.3d 707, 2009-Ohio-6993, 925 N.E.2d 641, ¶ 77. Appellants do not

dispute this conclusion; instead, they contend that the board's attempts to comply with R.C. 121.22 were sabotaged by the attorney general's office. They argue that the board would have been exempt pursuant to R.C. 121.229(G)(3) if the attorney general had not prevented the board's attorney from being present. Based on our review of the record, we conclude, as did the trial court and the court of appeals, that the board was not set up to violate the Open Meetings Act. Even if it had been, the board had at least one unassailable option available: it could have discussed all relevant matters openly. It did not. Accordingly, we agree with the court of appeals that "the board violated R.C. 121.22 by deliberating in executive session upon matters that it was required to discuss in open session." *Tobacco Use Prevention & Control Found.*, 185 Ohio App.3d 707, 2009-Ohio-6993, 925 N.E.2d 641, ¶ 74. We affirm the judgment of the court of appeals, which held that no contract was formed.

## Other Considerations

{¶ 30} The question whether it is wise to enact legislation is not the same question as whether the legislation is constitutional. *Bd. of Health v. Greenville* (1912), 86 Ohio St. 1, 20, 98 N.E. 1019. Several amici curiae filed briefs in this case. Some of them argued that the funds at issue would be better used for the original intended purpose (tobacco cessation) than the current intended purpose (jobs stimulus), and several argued the converse. None of those arguments concerns a court of law. The General Assembly has plenary legislative power. In the exercise of that power, the General Assembly evaluated Ohio's budget priorities and enacted S.B. 192 and H.B. 544. It is not for us to judge the wisdom of the General Assembly but to determine whether the exercise of its power comports with or violates the Ohio Constitution. We conclude that S.B. 192 and H.B. 544 do not violate the Ohio Constitution.

## Conclusion

{¶ 31} We affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

GALLAGHER and HARSHA, JJ., concur separately.

SEAN C. GALLAGHER, J., of the Eighth Appellate District, sitting for BROWN, C.J.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting for CUPP, J.

_____

**GALLAGHER, J., concurring.**

{¶ 32} I concur in the majority decision and agree that the General Assembly retained the power to reallocate the tobacco settlement money by enacting 2008 Sub.H.B. No. 544 and 2008 Am.Sub.S.B. No. 192. I write separately to more closely address the issues surrounding the actions of the General Assembly in creating the Tobacco Use Prevention and Cessation Trust Fund and whether such actions created a trust. In my view, the General Assembly arguably intended to create a trust and to irrevocably appropriate funds to that trust for antitobacco efforts. Though the purpose was noble, the efforts were ultimately unsuccessful.

{¶ 33} Under the statutory scheme that was enacted, the Tobacco Use Prevention and Control Foundation was appointed as trustee of the endowment fund. Former R.C. 183.08, 148 Ohio Laws, Part V, 10767, 10785. The general management of the foundation was vested in a board of trustees. Former R.C. 183.04, 148 Ohio Laws, Part V, at 10785. The foundation was to establish and carry out a plan to reduce tobacco use by Ohioans. Former R.C. 183.07, 148 Ohio Laws, Part V, at 10784. Emphasis was to be given to Ohio's youth and groups

disproportionately affected by the use of tobacco. Former R.C. 183.07, 148 Ohio Laws, Part V, at 10784. The endowment fund was in the custody of the treasurer of state, but it was set aside from the state treasury. Former R.C. 183.08(A), 148 Ohio Laws, Part V, at 10785. The foundation was to be self-sustaining. Former R.C. 183.08(B). 148 Ohio Laws, Part V, at 10786. However, even if the General Assembly had intended to permanently commit the funds to antitobacco efforts, the statutory scheme fell short of placing the funds beyond the reach of future legislation.

{¶ 34} The endowment fund was created solely from state funds that were set aside to be administered for the purpose of reducing tobacco use by Ohioans, with an emphasis on certain populations. The funds were public and were to be used for a specified public purpose for the benefit of all Ohioans. Although appellants may have directly benefited from the programs that were created, the enabling statutes did not specify any person or entity as the beneficiary of the funds or create any private property interest. "This key element is lacking in many state funds that set aside money for a specific purpose and are 'trust funds' in name only. * * * The existence of named beneficiaries is what transforms the Fund from money set aside for a purpose into a formal trust." *Wisconsin Med. Soc., Inc. v. Morgan*, 2010-WI-94, 787 N.W.2d 22, ¶ 69-70. The funds were state funds, and because no protected third-party property interests were created, they were subject to the legislature's plenary power over state money. See *Arizona Farm Bur. Fedn. v. Brewer* (Nov. 12. 2010), Ariz. App. No. 1 09-0756, 2010 WL 4542393 at *7. Further, although the funds were placed outside the state treasury and were dedicated to a particular use, the nature of the funds as state money was not altered, and the funds were not removed from legislative control. See *A.B.A.T.E. of Illinois, Inc. v. Giannoulias* (2010), 401 Ill.App.3d 326, 341 Ill.Dec. 109, 929 N.E.2d 1188.

{¶ 35} I believe that this is not a case where the General Assembly sought to encumber funds and bind future legislatures. Rather, the General Assembly failed to establish a proper trust to place the funds beyond the reach of subsequent legislation. Had a proper trust been created, no two-year encumbrance problem would exist.

{¶ 36} There is no doubt that many Ohioans stood to benefit from the antitobacco programs that were funded by the endowment fund. Though the result may seem unfair to some, the acts of the legislature were permissible and are not constitutionally infirm.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

**HARSHA, J., concurring.**

{¶ 37} Once the legislature initially placed the proceeds from the master settlement agreement ("MSA") between the state and the tobacco-product manufacturers into the state treasury, Section 22, Article II of the Ohio Constitution prohibited the legislature from subsequently creating an irrevocable public trust with those funds. As a result, the unexpended money in the endowment fund was subject to reappropriation by the legislature.

{¶ 38} Section 22, Article II of the Ohio Constitution states: "No money shall be drawn from the treasury, except in pursuance of a specific appropriation, made by law; and no appropriation shall be made for a longer period than two years."

{¶ 39} Under former R.C. 183.02, 148 Ohio Laws, Part V, 10767, 10777, the legislature directed that "[a]ll payments received by the state pursuant to the tobacco master settlement agreement shall be deposited into the state treasury to the credit of the tobacco master settlement agreement fund, which is hereby created." Once deposited into the MSA fund, the General Assembly provided that

the money was to be shifted into eight different funds, including the Tobacco Use Prevention and Cessation Trust Fund, see former R.C. 183.02(A) through (H), 148 Ohio Laws, Part V, at 10778-10789, which was "created in the state treasury," former R.C. 183.03, 148 Ohio Laws, Part V, at 10782.

{¶ 40} The legislature then appropriated money from this fund into an endowment fund. See former R.C. 183.08(A), 148 Ohio Laws, Part V, at 10785. Under former R.C. 183.08(A), the endowment fund was to "be in the custody of the treasurer of state but shall not be a part of the state treasury." Based on this language, the majority opinion views the endowment fund as a "custodial fund" removed from the biennial appropriation cycle, i.e., unexpended money in the endowment fund that did not automatically revert to the treasury after two years. However, this interpretation of former R.C. 183.08 overlooks the plain language of Section 22, Article II of the Ohio Constitution.

{¶ 41} In *State ex rel. Rothbacher v. Herbert* (1964), 176 Ohio St. 167, 27 O.O.2d 48, 198 N.E.2d 463, Katharina Rothbacher owned a savings deposit in a savings and loan company. The company dissolved, and all unclaimed deposits, including Rothbacher's deposit, were placed in a "regular account," i.e., an account of funds held in trust by the state treasurer, subject to the order of the superintendent of building and loan associations. Id. at 167. Subsequently, the state auditor, pursuant to statute, had the funds transferred into the General Revenue Fund. Id. Rothbacher then sought a writ of mandamus to compel the state treasurer to return her money. Id. at 168.

{¶ 42} This court denied the writ, holding that Rothbacher's funds were initially held in the regular account, subject to the order of the superintendent, and required no prior appropriation by the General Assembly. Id. at 169. But once the funds were transferred and became part of the General Revenue Fund, they were no longer subject to the order of the superintendent and "could be expended

16

only as provided by law." Id. Therefore, the funds could not be withdrawn unless the legislature made an appropriation under Section 22, Article II of the Ohio Constitution. Id. at 170.

{¶ 43} In this case, the MSA funds were initially deposited into the state treasury under former R.C. 183.02, 148 Ohio Laws, Part V, at 10777. Therefore, the legislature could not withdraw them except in accordance with Section 22, Article II of the Ohio Constitution, i.e., in pursuit of a specific appropriation, not to exceed two years. After the MSA funds had been deposited into the general fund, the legislature could not circumvent the constitutional limitation by appropriating them into a custodial account. *State ex rel. Rothbacher*, 176 Ohio St. at 169-170, 27 O.O.2d 48, 198 N.E.2d 463. In other words, the General Assembly could not create a custodial account to indirectly do what Section 22, Article II of the Ohio Constitution prohibits it from doing directly. See *Taylor v. Ross Cty. Commrs.* (1872), 23 Ohio St. 22, 34.

{¶ 44} Therefore, despite the fact that former R.C. 183.08(A) directed that the endowment fund was to "be in the custody of the treasurer of state but shall not be a part of the state treasury," any unexpended funds the legislature appropriated into the endowment fund should have reverted to the treasury after two years. And in light of Section 22, Article II of the Constitution, once funds are deposited into the state treasury, they cannot be used to create an irrevocable public trust.

{¶ 45} If the General Assembly intended to free the settlement funds from the dictates of Section 22, Article II of the Ohio Constitution, it had to place the MSA funds directly into a custodial account under R.C. 113.05(B), or the treasurer of state's contingent fund, created in R.C. 113.10, instead of first depositing the funds into the state treasury. Clearly the General Assembly knew how to create a custodial account — it used specific language to do so in former

R.C. 183.08.  See, e.g., R.C. 148.02, 149.305, and 3334.11.  Just as clearly, the language in former R.C. 183.02 merely directing that all payments received under the MSA be "deposited into the state treasury to the credit of" a specific fund does not create a custodial account.

**{¶ 46}** Because the funds appropriated to the endowment fund were not placed in an irrevocable public trust, the General Assembly was free to reappropriate the money to any fund it desired.  Far from being unconstitutional, 2008 Am.Sub.S.B. No. 192 and 2008 Sub.H.B. No. 544 are consistent with the constitutional mandate of Section 22, Article II of the Constitution.

**{¶ 47}** I agree with the analysis of the majority opinion on the other constitutional issues raised by this appeal.

_____

Zeiger, Tigges & Little, L.L.P., John W. Zeiger, and Stuart G. Parsell, for appellants Robert G. Miller Jr., David W. Weinmann, and American Legacy Foundation.

Richard Cordray, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Richard N. Coglianese, Michael J. Schuler, Damian Sikora, Aaron D. Epstein, and Katherine J. Bockbrader, Assistant Attorneys General, for appellees state of Ohio, Attorney General Richard Cordray, Treasurer Kevin L. Boyce, and the Ohio Department of Health and its director, Alvin D. Jackson.

Mac Murray, Petersen & Shuster and Helen Mac Murray, urging reversal for amici curiae former Attorney General Betty D. Montgomery, former Senate President Richard H. Finan, and former Director of Ohio Department of Health J. Nick Baird, M.D.

James E. Arnold & Associates, L.P.A., James E. Arnold, and R. Gregory Smith, urging reversal for amici curiae Academy of Medicine of Cleveland and

Northern Ohio, American Heart Association Great Rivers Affiliate, American Lung Association, American Cancer Society Cancer Action Network, Campaign for Tobacco-Free Kids, Ohio State Medical Association, American Heart Association, American Lung Association of the Midland States, American Cancer Society Ohio Division, Association of Ohio Health Commissioners, Ohio Public Health Association, and American Medical Association.

Law Offices of Russell A. Kelm, Russell A. Kelm, and Joanne W. Detrick, urging reversal for amicus curiae Citizens' Commission to Protect the Truth.

Bricker & Eckler, L.L.P., Anne Marie Sferra, and Daniel C. Gibson, urging affirmance for amici curiae Ohio Dental Association, Ohio Optometric Association, Ohio State Chiropractic Association, and Ohio Association of Community Health Centers.

Richard Cordray, Attorney General, and Jeannine R. Lesperance, Assistant Attorney General, urging affirmance for amici curiae President of the Ohio Senate Bill Harris and Speaker of the Ohio House of Representatives Armond Budish.

Squire, Sanders & Dempsey, L.L.P., Pierre H. Bergeron, and Thomas D. Amrine, urging affirmance for amicus curiae National Conference of State Legislatures.

Peck, Shaffer & Williams, L.L.P., Thomas A. Luebbers, and Erin A. Sutton, urging affirmance for amici curiae County Commissioners Association of Ohio, Ohio Job and Family Service Directors Association, Public Children Services Association of Ohio, and Ohio Child Support Enforcement Agency Directors Association.

Weston Hurd, L.L.P., and Daniel A. Richards, urging affirmance for amicus curiae Voices of Ohio Children.

_____