Pfeifer, J.,
dissenting from the answer to the first certified question and concurring in the answer to the second certified question.
{¶ 107} The federal court certified two questions to this court. I dissent from the majority’s response to the first question. I would hold that the 1989 version of R.C. 5301.56 applies to quiet-title actions filed after 2006 in which the surface owner alleges that mineral rights automatically vested in the surface owner as a result of abandonment prior to the effective date of the 2006 amendments to R.C. 5301.56. I concur in the majority’s response to the second question, i.e., that a payment of delay rental is neither a title transaction nor a saving event under the Ohio Dormant Mineral Act (“ODMA”).
*537 1989 ODMA
{¶ 108} In 2006, hindsight may have provided the General Assembly the vision it wished it had had when it passed the first version of the ODMA in 1988. But regardless of the changes the General Assembly implemented in 2006, former R.C. 5301.56 (“1989 ODMA”) functioned as the law in this state for 17 years, and through its operation created vested rights in certain property owners. Those vested rights cannot be taken away without running afoul of the Ohio Constitution and the Ohio Revised Code.
{¶ 109} As the lead opinion relates, the General Assembly enacted the 1989 ODMA “to provide a method for the termination of dormant mineral interests and the vesting of their title in surface owners, in the absence of certain occurrences within the preceding 20 years.” Sub.S.B. No. 223, 142 Ohio Laws, Part I, 981 (“S.B. 223”). It implemented that clear and unambiguous purpose through a statute that was bluntly efficient. The 1989 ODMA stated that “[a]ny mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface, if none of the following applies.” Former R.C. 5301.56(B)(1), S.B. 223, 142 Ohio Laws, Part I, 986. The statute set forth the few conditions that could prevent the reunification of mineral and surface rights in the land: if the mineral interest was in coal or was owned by a government entity (former R.C. 5301.56(B)(1)(a) and (b)) or if one of the saving events under former R.C. 5301.56(B)(1)(c) had occurred within the past 20 years. Id. Those saving events required some indication of use by the mineral-rights holder and ranged from filing a claim to preserve the interest to actual drilling or mining. Id. at 986-987.
{¶ 110} The impact of the law was not immediate—the General Assembly included in the 1989 ODMA a three-year grace period during which a mineral-rights holder could preserve his interest by performing one of the saving events listed in former R.C. 5301.56(B)(1)(c). Former R.C. 5301.56(B)(2), S.B. 223, 142 Ohio Laws, Part I, 987. A process was thus in place for a mineral-rights holder to prevent the statutory reunification of the mineral rights with the surface rights. Mineral-rights holders who had done nothing with their rights in the previous 20 years still had an additional three years to preserve their interests.
Statutory Interpretation
{¶ 111} In interpreting a statute, we must first look at its plain language. “If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.” State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn., 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). Thus, a statute that is clear should be unsusceptible to a court’s filling in *538 perceived blanks. “[A] statute that is free from ambiguity and doubt is not subject to judicial modification under the guise of interpretation.” Bernardini v. Conneaut Area City School Dist. Bd. of Edn., 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979). “In construing a statute, it is the duty of the court to give effect to the words used and not to insert words not used.” State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn., 69 Ohio St.3d 217, 220, 631 N.E.2d 150 (1994).
{¶ 112} The plain language of the 1989 ODMA states that absent a saving event, a separate mineral interest shall be deemed abandoned and the mineral interest shall vest in the owner of the surface property. The statute uses the word “shall”—the mineral interest “shall be deemed abandoned and vested in the owner of the surface”—and this court has “repeatedly recognized that use of the term ‘shall’ in a statute or rule connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary.” State ex rel. Cincinnati Enquirer v. Lyons, 140 Ohio St.3d 7, 2014-Ohio-2354, 14 N.E.3d 989, ¶ 28.
{¶ 113} The former statute plainly set forth the few conditions that the mineral-rights holder needed to meet to prevent the reunification of mineral and surface rights in the land. Former R.C. 5301.56 is absolutely silent as to any action required by the surface owner to effectuate the vesting of the mineral rights. There is no provision requiring the surface owner to affirmatively assert any claim, record any claim, or file any form of suit or other declaration of the vested interests. There is no statutory language that suggests that the vesting of the mineral rights was anything other than automatic. The statute mandated that it “shall” occur.
{¶ 114} The General Assembly could have required some further affirmative action by the surface owner prior to vesting, but it did not. The Uniform Dormant Mineral Interests Act (“UDMIA”), which the National Conference of Commissioners on Uniform State Laws approved and recommended-in August 1986 and which was thus available as a model at the time Ohio’s ODMA was enacted, requires the surface owner to “maintain an action to terminate a dormant mineral interest” that is “in the nature of and requires the same notice as is required in an action to quiet title.” UDMIA, Section 4(a), available at http://www.uniformlaws.org/shared/docs/dormant%20mineral% 20interests/ud-miaMinal_86.pdf (accessed Dec. 16, 2015). Ohio did not incorporate that provision into the 1989 ODMA.
{¶ 115} The fact that it did not had no constitutional consequence. The General Assembly stood on solid constitutional ground in not requiring notice or filing of suit by the surface owner prior to the mineral interest being deemed abandoned and vested in the surface owner. Before Ohio adopted the 1989 ODMA, the United States Supreme Court upheld the constitutionality of *539 Indiana’s Dormant Mineral Interests Act, “a statute providing that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder’s office.” Texaco, Inc. v. Short, 454 U.S. 516, 518, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The Indiana statute “contained a 2-year grace period in which owners of mineral interests that were then unused and subject to lapse could preserve those interests by filing a claim in the recorder’s office.” Id. at 518-519. Like Ohio’s 1989 ODMA, the Indiana statute did not require the surface owner to provide any notice to the mineral-rights holder before the lapse and reversion occurred; the court referred to the statute as “self-executing”:
Appellants simply claim that the absence of specific notice prior to the lapse of a mineral right renders ineffective the self-executing feature of the Indiana statute. That claim has no greater force than a claim that a self-executing statute of limitations is unconstitutional.
Id. at 536.
{¶ 116} The court held that the inaction of the mineral-rights holder rather than any act of the surface owner had caused the property right to lapse:
[T]he State of Indiana has enacted a rule of law uniformly affecting all citizens that establishes the circumstances in which a property interest will lapse through the inaction of its owner. None of the cases cited by appellants suggests that an individual must be given advance notice before such a rule of law may operate.
Id. at 537.
{¶ 117} Like Indiana, Ohio enacted a self-executing statute that vested in a surface owner any separated mineral rights that had been dormant for a period of 20 years. Like Indiana’s, Ohio’s statute was constitutional, and respondents do not argue that it was unconstitutional. They are left instead to argue that the General Assembly did not mean what the statute clearly said.
The Lead Opinion’s Interpretation of the 1989 ODMA
{¶ 118} The lead opinion subjects the 1989 ODMA to judicial modification under the guise of interpretation. What does the lead opinion interpret the General Assembly to have meant? Where the General Assembly wrote that dormant mineral interests “shall be deemed abandoned and vested in the owner of the surface,” the lead opinion interprets something like, “To reunite mineral *540 rights with the surface rights, the surface owner must successfully prosecute a quiet-title action against the owner of the mineral interest based upon the mineral-rights holder’s alleged abandonment of the mineral rights, and in that quiet-title action, the surface owner shall enjoy a conclusive presumption that the mineral rights have been abandoned.” That is, under the lead opinion’s interpretation, if the mineral rights are deemed abandoned under the 1989 ODMA, the surface owner enjoys only a “conclusive presumption” (a term not used in the statute) in a potential quiet-title action (an action that is not required by or even referred to in the statute). The lead opinion accomplishes this interpretation almost entirely through inserting words not used by the General Assembly. And the lead opinion virtually ignores the word “vested.”
The Meaning of “Deemed Abandoned”
{¶ 119} The lead opinion’s interpretation finds its genesis in the words “deemed abandoned.” The lead opinion states that deeming something abandoned creates a conclusive presumption of abandonment that can be used in a future action for proof of abandonment. But instead, the lead opinion should have employed the common usage of the word “deem.” There is no hidden meaning involving future proceedings embedded in the word “deemed.” “ ‘ “Deemed” has been defined as “considered,” “determined,” or “adjudged” * * *.’ ” Jacot v. Secrest, 153 Ohio St. 553, 559, 93 N.E.2d 1 (1950), quoting State ex rel. Hoagland v. Prairie Cty. School Dist. No. 13, 116 Mont. 294, 298, 151 P.2d 168 (1944). At the time the 1989 ODMA was passed, Black’s Law Dictionary defined “deem” as “[t]o hold; consider; adjudge; believe; condemn; determine; treat as if; construe.” Black’s Law Dictionary 374 (5th Ed.1979). In State ex rel. Brecksville Edn. Assn. v. State Emp. Relations Bd., 74 Ohio St.3d 665, 666, 660 N.E.2d 1199 (1996), fn. 1, this court noted that bargaining units that had been “deemed certified” by an uncodified section of an act “are treated as if they had been certified normally.” In Texaco, the United States Supreme Court indicated that private property that is “deemed to be abandoned” is “treat[ed] * * * as abandoned.” Texaco, 454 U.S. at 530, 102 S.Ct. 781, 70 L.Ed.2d 738.
{¶ 120} This court has previously addressed statutes containing the word “deemed” and interpreted them to mean that the deemed result occurred automatically by operation of law. In State ex rel. Battin v. Bush, 40 Ohio St.3d 236, 239, 533 N.E.2d 301 (1988), the statute at issue, R.C. 305.03(A), provided, “Whenever any county officer fails to perform the duties of his office for ninety consecutive days, * * * his office shall be deemed vacant.” Id. at 239. This court held that “[t]he inquiry established by this statute is not whether one has the right to a particular office but whether, upon certain facts, he has abandoned the office. * * * [T]he statute deems the office to be vacant automatically, upon the occurrence of the statutorily determined events.” Id. This court stated that *541 the statute was “by its terms, self-executing. Upon the happening of the enumerated events, the office is then vacant.” Id. at 241.
{¶ 121} In State ex rel. Trago v. Evans, 166 Ohio St. 269, 273, 141 N.E.2d 665 (1957), this court addressed a prior version of R.C. 305.03, which read:
Whenever any county officer is absent from the county for ninety consecutive days, except in case of sickness or injury as provided in this section, his office shall be deemed vacant and the board of county commissioners shall declare a vacancy to exist in such office.
See id. at 271.
{¶ 122} Because the sheriff at issue in Trago had been jailed in another county for more than 90 days, this court held that the county commissioners had properly declared the office vacant and refilled it. That the office was “deemed vacant” under the statute in fact created a vacancy. In Trago, “[t]he vacancy had been created by operation of law, leaving a mere ministerial duty to appoint someone to fill the office.” State ex rel. Battin, 40 Ohio St.3d at 239, 533 N.E.2d 301.
{¶ 123} In State ex rel. Foster v. Madison Twp. Bd. of Edn., 151 Ohio St. 413, 86 N.E.2d 598 (1949), the court addressed a statute that “deemed re-employed” any teacher who had not been given notice by the school board by a certain date of its intent to not rehire the teacher:
Any teacher employed under a limited contract shall at the expiration of such limited contract be deemed re-employed under the provisions of this act at the same salary plus any increment provided by the salary schedule unless the employing board shall give such teacher written notice on or before the thirty-first day of March of its intention not to re-employ him.
See id. at 414.
{¶ 124} This court affirmed the appellate court’s granting of a writ of mandamus ordering the district to execute a contract with a teacher who had not received the required notice of intent not to rehire. The deemed reemployment made the offering of an employment contract mandatory under the law once the condition of failing to give timely notice of a decision not to rehire had been met.
{¶ 125} In Jacot, 153 Ohio St. at 557, 93 N.E.2d 1, this court considered the same “deemed re-employed” statute and acknowledged that through its ordinary *542 operation, the statute automatically requires the offer of reemployment once the date passes for giving notice of intent not to rehire.
{¶ 126} In In re VHA Diagnostic Servs., Inc., 65 Ohio St.3d 210, 602 N.E.2d 647, (1992), this court adopted the reasoning of a court of appeals’ decision that treated the terms “considered” and “deemed” as synonymous. In VHA, this court addressed former R.C. 3702.53(A)(3), which set forth that a certificate of need “shall be considered to have been granted” if the director of the Ohio Department of Health (“ODH”) did not grant or deny the certificate within the applicable time period set forth in the statute. This court decided the case “on the authority of the court of appeals’ opinion below” and attached that opinion as an appendix to the opinion of this court. Id. The court of appeals opinion referred to the “shall be considered to have been granted” statutory language as the “deemed-granted provision,” under which the “ODH by inaction permits a [certificate of need] to be issued by operation of law.” Id. at 217. That the certificate of need was'“considered to have been granted” meant that it had been deemed granted by operation of law.
{¶ 127} Thus, under the plain meaning of the word “deemed” and under the interpretation of the word by this court, the “deemed abandoned” language in the 1989 ODMA means that the mineral rights were, by operation of law, to be considered or treated as abandoned.
{¶ 128} But the lead opinion claims that the “deemed abandoned” language created a presumption of abandonment that “was only an evidentiary device that applied to litigation seeking to quiet title to a dormant mineral interest.” Lead opinion at ¶ 26. The Michigan Supreme Court, in addressing the “deemed abandoned” language in Michigan’s dormant-mineral-interest act rejected the idea that it created any evidentiary presumption:
Contrary to defendants’ arguments, the act does not create any eviden-tiary presumption. None of the provisions of the act purport to be concerned with the owner’s intent to abandon * * *. Rather, the act is designed to increase the marketability and development of severed mineral interests by creating a rule of substantive law which requires owners to undertake minimal acts indicative of ownership at least every 20 years. The statutory approach to these issues has the added advantage of eliminating uncertainty and minimizing litigation, see In re Mercure Estate, 391 Mich. 443, 448, 216 N.W.2d 914 (1974).
(Footnote deleted.) Van Slooten v. Larsen, 410 Mich. 21, 50-51, 299 N.W.2d 704 (1980).
*543 {¶ 129} Like the Michigan statute, the 1989 ODMA did not create a presumption to be employed in a future action—instead, it created a rule of substantive law. The law vested a property right by operation of law upon the nonoccurrence of a saving event within a certain period. The 1989 ODMA did not merely create a simplified way to prove abandonment in a quiet-title action; instead, on its own, it vested in the surface owner the interest in the minerals under the surface.
{¶ 130} Still, a surface owner may choose to bring an action to quiet title pursuant to R.C. 5303.01 in order to enforce the rights vested through the operation of the 1989 ODMA. But the lead opinion conflates the substantive property right vested by the operation of the 1989 ODMA with a quiet-title action brought pursuant to R.C. 5303.01 to achieve judicial recognition of that property right. The 1989 ODMA vested the right, and a separate quiet-title action would allow the surface owner to confirm that the statutory elements had been met and that the reversion of the mineral rights had occurred. Vesting is not delayed until the surface owner brings a quiet-title action; the quiet-title action simply shows the world that the interest had vested.
{¶ 131} Van Slooten recognized that vesting under a dormant-mineral-interest act with “deemed abandoned” language occurs without a hearing. The court held that “due process does not require a hearing prior to vesting title in the owner of the surface estate” and that a person who had been deemed to have abandoned his mineral interest would have an opportunity after vesting “for a hearing to determine whether the statutory requirements have been met and to ascertain the ownership of the property.” Van Slooten, 410 Mich. at 55, 299 N.W.2d 704. The vesting does not follow a quiet-title action; the quiet-title action follows the vesting.
{¶ 132} Finally, let us accept for a moment that the 1989 ODMA did create a conclusive presumption of abandonment that could be employed in a quiet-title action. What happened to that conclusive presumption? Why could a surface owner not make use of that conclusive presumption in a quiet-title action against the mineral-rights holder today?
Vesting
{¶ 133} The lead opinion spends a great deal of time discussing the words “deemed abandoned” and precious little time addressing the word “vested.” The 1989 ODMA stated that the mineral rights “shall be deemed abandoned and vested in the owner of the surface.” That word, “vested,” is a problem for the lead opinion. The General Assembly’s use of the word “vested” in the 1989 ODMA belies the lead opinion’s assertion that the reunification of the mineral rights with the surface rights is somehow incomplete, short of litigation, upon the passage of 20 years of inactivity by the mineral-rights holder. Far from being incomplete, a vested right is “complete, consummated and subject to involuntary *544 divestiture only upon due process of law.” Viers v. Dunlap, 1 Ohio St.3d 173, 176, 438 N.E.2d 881 (1982), overruled in part on other grounds, Wilfong v. Batdorf, 6 Ohio St.3d 100, 451 N.E.2d 1185 (1983), paragraph three of the syllabus. This court has recognized that “as defined, a right is ‘vested’ when it ‘so completely and definitely belongs to a person that it cannot be impaired or taken away without the person’s consent.’ ” Harden v. Ohio Atty. Gen., 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, ¶ 9, quoting Black’s Law Dictionary 1324 (7th Ed.1999). That the mineral interest is “vested in the owner of the surface” means that there is no further procedure necessary to complete the reunification of the mineral rights with the surface rights.
{¶ 134} That vesting is crucial. “A ‘vested right’ can ‘be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right.’ ” State ex rel. Jordan v. Indus. Comm., 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9, quoting Washington Cty. Taxpayers Assn. v. Peppel, 78 Ohio App.3d 146, 155, 604 N.E.2d 181 (4th Dist.1992).
{¶ 135} It is because those property rights vested in the qualifying surface owners pursuant to the 1989 ODMA that the 2006 amendment to the statute cannot apply to those surface owners. First, the 2006 changes, which are still in effect today, create a process—where none had existed before—-requiring surface owners to perform certain tasks pnor to mineral interests being reunited with the surface interest and vested in the surface owner:
Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies.
R.C. 5301.56(B).
{¶ 136} The requirements of R.C. 5301.56(E)—providing notice to the mineral-rights holder and filing an affidavit of abandonment with the county recorder-—• must be met before the mineral rights can be deemed abandoned and vested in the surface owner. The 2006 amendment applies—by its own terms—only to situations in which vesting in the surface owner has not yet occurred and places conditions on surface owners before the mineral rights can vest in them. Nothing in the 2006 amendment suggests that it applies in situations in which mineral rights had already vested before the effective date of the amendment. It simply sets forth how mineral interests that had not vested in the surface owner *545 before the effective date of the amendment can become vested in the surface owner.
{¶ 137} Any other interpretation is contrary to the protections from retroactive legislation provided by R.C. 1.58 and Article II, Section 28 of the Ohio Constitution. R.C. 1.58(A)(2) states that the amendment of a statute does not “[a]ffect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder.” Property rights automatically vested in the surface owner under the 1989 ODMA when the statutory conditions were met; thus, any amendment to the statute that operates to affect those rights—by requiring, for instance, that mineral rights cannot be vested in the' surface owner without the performance of certain notice procedures—contravenes R.C. 1.58.
{¶ 138} Further, Article II, Section 28 of the Ohio Constitution prohibits the General Assembly from passing retroactive laws. There is no indication that the General Assembly intended the 2006 amendment to be retroactive, but statutory amendments that appear prospective in operation nonetheless violate the prohibition against retroactive laws if the statute’s prospective operation would retroactively destroy rights that had already vested:
We have also stated that the “retroactivity clause nullifies those new laws that ‘reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective].’ Miller v. Hixson (1901), 64 Ohio St. 39, 51, 59 N.E. 749, 752.” Bielat [v. Bielat], 87 Ohio St.3d [350,] 352-353, 721 N.E.2d 28 [2000]. In Van Fossen [v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 522 N.E.2d 489 (1988)], this court stated that the constitutional limitation against retroactive laws “ ‘include[s] a prohibition against laws which commenced on the date of enactment and which operated in futuro, but which, in doing so, divested rights, particularly property rights, which had been vested anteri- or to the time of enactment of the laws.’ ” [Id. at 105], quoting Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence (1936), 20 Minn.L.Rev. 775, 781-782.
Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 14. To apply the requirements of the 2006 amendment to surface owners who had obtained vested mineral rights pursuant to the 1989 ODMA implements a textbook example of an unconstitutionally retroactive law. Under the majority’s holding, the new law reaches back and divests the surface owners of property rights that had vested prior to the *546 operation of the 2006 amendment to the statute. As applied by the majority, the 2006 amendment impairs substantive vested rights and thus is unconstitutional.
{¶ 139} The lead opinion glosses over the significant differences between the 1989 ODMA and the ODMA as amended in 2006. As amended in 2006, the ODMA does much more than impose notice and procedural requirements on a surface owner. Pursuant to R.C. 5301.56(H)(1)(a), a mineral-rights holder can file a present-day claim preserving his interest in mineral rights long after his interest would have been deemed abandoned under the 1989 ODMA. A mineral-rights holder can leave his or her interest dormant in virtual perpetuity under the 2006 amendment—the clock begins to run only after a surface owner serves notice of an intent to declare the mineral interest abandoned. At.that point, the mineral-rights holder has 60 days to file a claim to preserve the mineral interest and can preserve the claim by simply stating that “the holder does not intend to abandon, but instead to preserve, the holder’s rights in the mineral interest.” R.C. 5301.56(C)(1) and (H)(1). The mineral-rights holder does not have to provide any evidence that a saving event had occurred within the past 20 years; simply filing the claim that says, essentially, “I’d like to hold on to that mineral interest” after receiving notice from the surface owner of an intent to declare the interest abandoned is enough to squelch the reunification of the mineral rights with the surface rights. Dodd v. Croskey, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 30.
{¶ 140} Applying the 2006 amendment to surface owners whose rights to mineral interests had vested pursuant to the 1989 ODMA constitutes nothing less than a taking. The 1989 ODMA provided that a mineral-rights holder’s interest was considered abandoned by operation of law, having lapsed due to the mineral-right holder’s 20 years of inaction, and was subject to a three-year grace period during which a mineral-rights owner could preserve the interest through a simple filing. In contrast, under the majority’s interpretation of the 2006 amendment, a surface owner whose mineral-rights interest vested by operation of the 1989 ODMA lost those mineral rights immediately on the effective date of the 2006 amendment—without any required period of inactivity by the surface owner and with no opportunity to preserve the property right through satisfying a statutory condition—for no reason other than that the General Assembly wished the rights to revert to someone else. The General Assembly gave no indication that the 2006 amendment should be interpreted that way, and R.C. 1.58 and the Ohio Constitution should prevent it from being interpreted that way.
Conclusion
{¶ 141} Because of the skyrocketing value of mineral rights in certain parts of our state, some property owners are going to reap profits that they never would have imagined when they purchased or inherited their surface or mineral rights. *547 The General Assembly could not have foreseen the financial impact that the 1989 ODMA would have on certain parties. One observer notes:
Volkema, Thomas, Miller & Scott, L.P.A., Michael S. Miller, and Daniel R. Volkema; and Critchfield & Johnston and Steven J. Shrock, for petitioner.
Jones Day, Jeffery D. Ubersax, and Dean C. Williams; and Thornburg & Bean and Charles H. Bean, for respondent North American Coal Royalty Company.
Reed Smith, L.L.P., Nieolle R. Snyder Bagnell, and Kevin C. Abbott, for respondents Chesapeake Exploration, L.L.C., CHK Utica, L.L.C., Dale Pennsylvania Royalty, L.P., Larchmont Resources, L.L.C., and Total E & P USA, Inc.
Kegler Brown Hill & Ritter Co., L.P.A., Andrew J. Sonderman, John P. Brody, and Margeaux Kimbrough, in support of petitioner, for amici curiae Gulfport Energy Corporation, Protégé Energy III, L.L.C., and Paloma Resources, L.L.C.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, and Samuel C. Peterson, Deputy Solicitor, in support of petitioner, for amicus curiae the state of Ohio.
Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Gregory W. Watts, Matthew W. Onest, David E. Butz, and William G. Williams, in support of petitioner, for amici curiae Jeffco Resources, Inc., Christopher and Veronica Wendt, Carol S. Miller, Mark and Kathy Rastetter, Douglas Henderson, John *548 Yaskanich, Djuro and Vesna Kovacic, Brett and Kim Trissel, and Steven E. and Diane Cheshier.
*547 These shale formations prior to the advent of Hydraulic Fracturing were deemed worthless by the upstream industry; ergo, the mineral interest in oil and gas were also worthless, so allowing the mineral interest to [lie] dormant was the natural result. It was of little difference to anyone whether the subsurface rights vested with the surface owner [or] not. There was no foreseeable justification for filing a claim to preserve one’s claim to mineral interest in such shale plays. The “shale gale” changed all that * * *.
Fenner L. Stewart, When the Shale Gale Hit Ohio: The Failures of the Dormant Mineral Act, Its Heroic Interpretations, and Grave Choices Facing the Supreme Court, 43 Cap.U.L.Rev. 435, 466 (2015), fn. 295.
{¶ 142} But the shale gale cannot change what the General Assembly passed in 1988, nor should it change the way we interpret it. The 1989 ODMA vested rights in certain property owners that could not be taken away by subsequent legislation. I accordingly dissent.
O’Neill, J., concurs in the foregoing opinion.
*548 Bricker & Eckler, L.L.P., Matthew W. Warnock, Daniel C. Gibson, and Daniel E. Gerken, in support of respondents regarding the first certified question, for amici curiae the Noon, Shepherd, Greegor, Merecka, and Kinney Families.